**A.M.L., Petitioner,**

**v.**

**DEPARTMENT OF HEALTH, DIVISION OF HEALTH CARE FINANCING, Respondent.**

**No. 920595–CA.**

Court of Appeals of Utah.

Oct. 21, 1993.

antibodies that attack healthy tissues and organs. It can affect any body organ or system, such as the blood, skin, joints, kidneys, brain, heart, lungs, central nervous system, or connective tissue. Lupus is presently incurable.

To slow the progress of the disease, A.M.L.'s primary physician, Dr. David C. Flinders, prescribed the drug Prednisone, a corticosteroid. This anti-inflammatory drug has been widely used to manage lupus despite its several potentially serious side effects. Among these side effects are appetite stimulation, water retention, and weight gain. A.M.L. has gained sixty-six pounds since she started taking Prednisone.

A disproportionate amount of A.M.L.'s weight gain occurred in her breasts—her bra size increased from a 36B to a 44DD. Dr. Flinders attributes this weight gain distribution to the fact that steroid use can cause truncal obesity. As a result of the substantial increase in A.M.L.'s breast size, she experiences chronic neck and back problems, numbness in her arms and hands, headaches, and difficulty in breathing. In addition, she has painful grooves in her shoulders from her bra straps, extremely sensitive stretch marks one to two inches wide,[1] and in the summer she suffers from severe yeast infections and sores under her breasts.

Because A.M.L. was in continual pain due to her large breasts, she sought a referral from her treating physician for a reduction mammaplasty. Dr. Charles Pledger, a plastic surgeon, agreed with Dr. Flinders that A.M.L. would benefit from this procedure because A.M.L. has about 800 to 1000 grams of excess tissue in each breast.[2] In the opinion of both Dr. Pledger and Dr. Flinders, A.M.L.'s requested breast reduction would not be for cosmetic reasons, but rather for medical reasons, including relief of pain.

Paul McConkie (argued), Utah Legal Services, Provo, Michael E. Bulson, Utah Legal Services, Inc., Ogden, for petitioner.

Jan Graham, State Atty. Gen., J. Stephen Mikita (argued), Douglas W. Springmeyer, Salt Lake City, Asst. Attys. Gen., for respondent.

Before GREENWOOD, JACKSON and RUSSON, JJ.

GREENWOOD, Judge:

A.M.L. petitions for review of a final decision of the Division of Health Care Financing (DHCF) denying her Medicaid benefits for a reduction mammaplasty (breast reduction) that DHCF deemed "medically unnecessary" in her case. We reverse.

### FACTS

A.M.L. is a twenty-eight year old woman who has had systemic lupus erythematosus (lupus) since she was eighteen years old. Lupus is a chronic, inflammatory disease in which the body's immune system forms

---

**1.** Apparently, Prednisone use can cause the skin to lose its elasticity.

**2.** Dr. James M. Clayton, another plastic surgeon consulted by A.M.L., indicated that a breast re-

duction would be undertaken for medical reasons when there are between 400 and 600 excess grams of breast tissue.

On March 15, 1991, Dr. Pledger filed on behalf of A.M.L. a Request for Prior Authorization for a reduction mammaplasty. DHCF denied this request on April 10, 1991. A.M.L. requested, and received, a formal administrative hearing which was held on August 9, 1991. Following the hearing, the hearing officer recommended that A.M.L.'s request for prior authorization be denied, reasoning that her case did not fit among the listed exceptions to the general rule barring cosmetic, plastic, or reconstructive services.[3] He did comment, however, that A.M.L. had presented a compelling case for an exception to this rule.

Rod Betit, Interim Executive Director of the Department of Health, reviewed the hearing officer's recommended decision and remanded the case to obtain recommendations from a DHCF physician regarding the "medical necessity" of the breast reduction and to determine whether an exception to current policy should be made in A.M.L.'s case. Pursuant to the remand, the hearing officer requested that Dr. John C. Hylen, a DHCF physician who is board certified in internal medicine, review the matter and provide an opinion.

Dr. Hylen subsequently submitted a written statement indicating that the breast reduction requested by A.M.L. was not "medically necessary." Dr. Hylen did not personally examine A.M.L. However, after review of her medical file and Goodman & Gilson, *The Pharmacological Basis of Therapeutics* 1478–79 (MacMillan 1985), Dr. Hylen opined that Prednisone use, not the large size of A.M.L.'s breasts, caused the yeast infections and sores in the summer. In addition, Dr. Hylen stated that

any back pain or curvature of the spine experienced by A.M.L. was probably also due to the Prednisone. He noted that "[e]nlarged breast [sic] complicating prednisone therapy causing back pain is rarely reported."

Thereafter, the hearing officer presided over a second hearing in order to allow A.M.L. to cross examine Dr. Hylen. The hearing officer then filed a Recommended Decision on Remand on July 29, 1992, again denying A.M.L.'s request for preauthorization for reduction mammaplasty. On August 10, 1992, Betit filed a Final Agency Action finding that a breast reduction was of "unproven value" to A.M.L., and that A.M.L. had failed to show, by a preponderance of the evidence, that the procedure was "medically necessary." A.M.L. seeks review of this determination, arguing that the evidence overwhelmingly supports her position that breast reduction surgery is medically necessary in her case.[4]

## STANDARD OF REVIEW

Administrative agency action based on factual findings will be overturned only if it " 'is not supported by substantial evidence when viewed in light of the whole record before the court.' " *King v. Industrial Comm'n*, 850 P.2d 1281, 1285 (Utah App.1993) (citing Utah Code Ann. § 63–46b–16(4)(g) (1989)). Substantial evidence is defined as "that which a reasonable person 'might accept as adequate to support a conclusion.' " *Id.* (citations omitted). When reviewing the substantiality of the evidence, the reviewing court must consider both the evidence sup-

---

3. The rule states:
    1. Cosmetic, plastic, or reconstructive surgery procedures may only be covered when medically necessary to:
      a. correct a congenital anomaly;
      b. restore body form or function following an accidental injury; or
      c. revise severe disfiguring and extensive *scarring resulting from neoplastic surgery.*
Utah Code Admin.P. R414–10–6(M) (1993).

4. A.M.L. also claimed that by denying her funding for breast reduction surgery, DHCF violated a federal regulation stating that a Medicaid agency "may not arbitrarily deny or reduce the

amount, duration, or scope of a required service ... to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c) (1992). Medicaid will pay for breast reconstruction surgery after a mastectomy performed because of breast cancer. Medicaid Information Bulletin, Procedure Code # 19360, 19364. Therefore, A.M.L. argues, Medicaid should pay for her "breast reconstruction" after the course of treatment prescribed for her lupus results in gross disfigurement of her breasts. In light of the resolution reached in this case, it is not necessary to address this argument.

porting the agency's findings and the evidence negating these findings. *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990). " 'Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." ' " *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987) (citations omitted).

## ANALYSIS

Medicaid was established in 1965 "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). The federal government reimburses states electing to participate in the Medicaid program for a percentage of the funds they expend in providing medical care for eligible individuals and families. *Allen v. Utah Dep't of Health,* 829 P.2d 122, 124 (Utah App.1992), *aff'd,* 850 P.2d 1267 (Utah 1993). In order to qualify for reimbursement, however, a state must develop a plan that is consistent with the Medicaid statute and federal implementing regulations. 42 U.S.C. § 1396 (1992).

The federal government has granted participating states considerable latitude in creating and implementing their Medicaid programs. State Medicaid programs need only contain " 'reasonable standards ... for determining ... the extent of medical assistance under the plan which ... are consistent with the objectives of [Medicaid].' " *Beal v. Doe,* 432 U.S. 438, 441, 97 S.Ct. 2366, 2369, 53 L.Ed.2d 464 (1977) (quoting 42 U.S.C. § 1396a(a)(17) (Supp. V 1970)). However, "serious statutory questions might be presented if a state Medicaid plan excluded *necessary medical treatment* from its coverage." *Id.* at 444, 97 S.Ct. at 2371 (emphasis added).

In this case, DHCF concedes that a rule interpreted as creating an irrebuttable presumption that breast reduction surgery will not be covered would be unreasonable and inconsistent with the Medicaid statute and implementing regulations. Consequently, in addition to the three express exceptions listed in R414–10–6, DHCF authorizes breast reduction surgery in particular cases of "medical necessity." The hearing officer's initial ruling, therefore, that A.M.L.'s case did not fit within one of the exceptions listed in R414–10–6 failed to recognize DHCF's practice of covering breast reduction surgery when "medically necessary." Thus, in the remand proceedings, the hearing officer was required to consider the weight and credibility of all evidence presented for and against a finding of a "medical necessity" exception to the general rule.

DHCF based its final decision to deny Medicaid benefits for A.M.L.'s breast reduction on the testimony given by Dr. Hylen, a DHCF-hired physician. In Dr. Hylen's opinion: (1) no documentation indicated that breast reduction surgery has any effect on backache; (2) excess breast weight could not cause respiratory problems; (3) the stretch marks on A.M.L.'s breasts were probably unrelated to the massive size of her breasts; and (4) large breasts probably did not cause numbness in the hands. He responded to the question of when reduction mammaplasty would be "medically necessary" by stating, "[i]t isn't medically necessary."

In addition, Dr. Hylen also provided the hearing officer with a legal opinion about the scope of Medicaid benefits. When the hearing officer asked him whether Medicaid ever permitted coverage of breast reduction surgery, Dr. Hylen responded, "It's not a benefit." When the hearing officer pressed him about the possibility of a "medically necessary" breast reduction, Dr. Hylen again answered that Medicaid would not cover this procedure. This opinion contravenes Medicaid policy and DHCF's position that Medicaid would provide benefits for a "medically necessary" breast reduction.

In contrast to Dr. Hylen's testimony, A.M.L.'s treating physicians provided opinions that were substantiated in medical lit-

erature.[5] Dr. Flinders, A.M.L.'s primary treating physician for the past thirteen years, submitted a letter to the DHCF hearing officer stating that A.M.L.'s "substantial increase in breast size ... has lead to chronic neck and back problems." Dr. Pledger, one of the plastic surgeons who examined her, submitted a letter to the DHCF hearing officer stating that A.M.L. has "problems with the back, largely caused by large breasts. She has pain in the upper back and in the neck, also constant pain in the shoulders and painful grooves from the bra straps. During the summer she gets severe yeast infections under the breasts." Dr. Clayton, another plastic surgeon who examined A.M.L., submitted a letter in which he characterized A.M.L. as having "severe problems relating to very large breasts." He observed that

[A.M.L.] has upper back, neck, and shoulder aching due to the heavy weight of her breasts. She is also getting grooving in her shoulders from the bra straps pressing due to the large breast size.... She also indicated that her hands go to sleep. This has been shown, in some patients, to be due to the heavy weight of the breast pulling on the bra strap and putting pressure on the brachioplexus.

Further, we note that several courts require state Medicaid agencies to recognize a presumption "in favor of the medical judgment of the attending physician in determining the medical necessity of treatment." *Weaver v. Reagen*, 886 F.2d 194, 200 (8th Cir.1989); *see also Pinneke v. Preisser*, 623 F.2d 546, 550 (8th Cir.1980) ("The decision of whether or not certain treatment or a particular type of surgery is 'medically necessary' rests with the individual recipient's physician and not with cleri-

cal personnel or government officials."). The basis for this presumption is found in part in the legislative history of the Medicaid statute: "The Committee's bill provides that the physician is to be the key figure in determining utilization of health services— and provides that it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determining the length of stay." S.Rep. No. 404, 89 Cong., 1st Sess. *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 1986. In addition, "[t]he Medicaid statute and regulatory scheme create a presumption in favor of the medical judgment of the tending physician in determining the medical necessity of treatment." *Weaver*, 886 F.2d at 200; *see also Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987) (stating that in social security disability proceeding, reports of treating or consulting physicians are entitled to greater weight than those of physicians hired by agency resisting claim); *Worthington v. Idaho Dep't of Health and Welfare*, No. 69458, slip op. at 5 (2d Dist. Idaho Feb. 20, 1992) (holding that "the legislative history, Medicaid case law, and the mechanics of the Medicaid program itself require that an attending physician's opinion as to what constitutes medical necessity in a given case be given deference").

In accordance, if DHCF elects not to give deference to the testimony given by the treating physician, the agency should "provide a reasoned basis for declining to do so which is consistent with the purposes of the Medicaid Act." *Worthington*, slip op. at 7; *see also Frey*, 816 F.2d at 513 ("If the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons

5. For example, A.M.L. submitted a recent study concluding that the reason for breast reduction surgery is "purely medical" when a woman has a body surface area of 2.00m2 and more than 628 grams of excess tissue in the breast. Paul L. Schnur et al., *Reduction Mammaplasty: Cosmetic or Reconstructive Procedure?* 27 Annals of Plastic Surgery 232 (1991). A.M.L.'s body surface area is within 1/100th of the standard, and she has 800 to 1000 grams of excess tissue in each breast. Also, the *Guide to Cosmetic Surgery*, written by the American Society of Plastic and Reconstructive Surgeons, supported A.M.L.'s claims that her pain and discomfort are related to the size of her breasts. This book noted that excessively large breasts can cause "medical problems like back pain, skeletal deformities, breathing difficulties, skin irritation, restricted motion, and numbness in the hands. Many women with oversized breasts also develop indentations in their shoulders where their bra straps press into their flesh." Josleen Wilson, *The American Society of Plastic and Reconstructive Surgeons' Guide to Cosmetic Surgery* Chapter 21 (Simon & Schuster 1992).

for this action must be set forth."). In this case, however, DHCF has not done so. DHCF's finding that the reduction mammaplasty was not medically necessary is not supported by substantial evidence in the record. Instead, the record evidence negates the finding, particularly considering medical opinions provided by A.M.L.'s treating physicians.

## CONCLUSION

We conclude that the evidence in the record does not support DHCF's determination that a breast reduction for A.M.L. was not medically necessary. Rather, the evidence overwhelmingly supports the medical necessity of a breast reduction in A.M.L.'s case. Therefore, we reverse DHCF's decision.

JACKSON, J., concurs.

RUSSON, J., concurs in result.