HOLMAN, Appellant,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.

[Cite as *Holman v. Ohio Dept. of Human Serv.* (2001), 143 Ohio App.3d 44.]

Court of Appeals of Ohio,
Seventh District, Monroe County.

No. 836.

Decided Jan. 5, 2001.

*Southeastern Ohio Legal Services* and *Dennis M. Harrington,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Joy D. Harris,* Assistant Attorney General, Health and Human Services Section, for appellee.

GENE DONOFRIO, Judge.

Appellant, Sandra Holman, appeals a decision rendered by the Monroe County Court of Common Pleas upholding a ruling by appellee, the Ohio Department of Human Services ("ODHS"), which sustained administrative denials of appellant's request for Medicaid coverage of an abdominoplasty surgical procedure.

Appellant receives Medicaid benefits through the Monroe County Department of Human Services. Appellant is 5'1" tall and had weighed over three hundred pounds during a pregnancy. Since 1991, appellant lost more than one hundred fifty pounds and currently weighs one hundred eighteen pounds. Due to the massive weight-loss, a significant amount of redundant tissue hangs on appellant's body. Appellant complains of severe upper and lower back pain, pain and discomfort due to the rubbing of the redundant tissue, skin rashes and excessive odor in the redundant tissue, and collection of sweat and dirt in the folds of the tissue. Appellant also claims to be at risk of lung collapse and loose ribs due to the excess tissue. Removal of the excess skin tissue requires surgery.

Appellant is anxious to be gainfully employed. However, she has difficulty lifting, reaching, bending, and sitting for prolonged periods of time due to the excess tissue. Appellant also has a nine-month-old child and claims that she is unable to lift the child due to her condition. Appellant submitted a request for Medicaid reimbursement for an abdominoplasty and bilateral mastoplexy to the Medical Operations Section ("MOS") of ODHS. On June 3, 1998, MOS received a letter from Robert Ruberg, M.D. (Dr. Ruberg), appellant's treating physician, asserting that appellant was in need of surgery to complete rehabilitation from morbid obesity. MOS reviewed the request and submitted it to the Committee for Special Requests ("committee"). The committee found that the procedures were cosmetic and not a medical necessity. Thereafter, MOS denied appellant's request for prior authorization of both the abdominoplasty and bilateral mastoplexy.

Appellant appealed MOS's decision. A state hearing officer held a hearing on November 19, 1998. The hearing officer issued a decision January 4, 1999, denying appellant's request for prior authorization. Appellant appealed to ODHS, and on February 3, 1999, ODHS affirmed the decision of the state hearing officer. Appellant appealed ODHS's decision to the Monroe County Court of Common Pleas. On December 15, 1999, the trial court affirmed the administrative appeal decision. Appellant then filed a timely notice of appeal to this court.

Appellant's first assignment of error states:

"The court below erred in affirming the decision of the Ohio Department of Human Services, which decision is not in accordance with law."

Appellant's second assignment of error states:

"The court below erred in affirming the department's decision, which decision is not supported by reliable, probative and substantial evidence."

Appellant's expert, Dr. Bozian, examined appellant and determined that the requested abdominoplasty was a medical necessity. However, Dr. Bozian also determined that the requested bilateral mastoplexy was not a medical necessity. Based upon this determination, appellant argues in this appeal only ODHS's denial of her request for prior authorization of the abdominoplasty.

Appellant argues that the trial court erred in upholding the administrative appeal decision because the decision was not in accordance with law. Appellant's argument essentially consists of three parts.

In the first part of appellant's argument, she asserts that ODHS erred in its interpretation of Ohio Adm.Code 5101:3–4–28. Appellant argues that ODHS erroneously ruled that abdominoplasty is normally considered cosmetic and noncovered surgery unless a party establishes that there is a medical necessity for the surgery. Appellant argues that a proper reading of Ohio Adm.Code 5101:3–4–28 indicates that plastic surgery is not presumed to be aesthetic and noncovered but rather is merely noncovered when performed for aesthetic purposes. Appellant argues that ODHS's initial error of presuming abdomino-plasty to be a noncovered service tainted ODHS's entire analysis of the question of medical necessity.

R.C. 119.12 permits a party to appeal decisions of ODHS to the common pleas court. That section states:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.  * * *"

When reviewing an order of an administrative agency in a R.C. 119.12 appeal, the common pleas court is bound to affirm the agency's order "if it is supported by reliable, probative, and substantial evidence, and is in accordance with law." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750. See, also, *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476. The common pleas court "'must give due deference to the administrative resolution of evidentiary conflicts'" and, therefore, must not substitute its judgment for that of the administrative agency. *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870,

577 N.E.2d 720, 724–725, quoting *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268.

On appeal from the trial court's review of the agency's order, an appellate court's review is more limited, and is restricted to a determination of whether the trial court abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267–268. An abuse of discretion connotes that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

As opposed to an abuse-of-discretion standard employed for issues of fact, an appellate court conducts a *de novo* review on issues of law. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

In Ohio, the idea of "medical necessity" is the fundamental concept underlying the Medicaid program. The Ohio Medicaid program reimburses medical services that are medically necessary. Ohio Adm.Code 5101:3–1–01(A) defines "medical necessity" and provides:

"Unless a more specific definition for a category of services is included within 5101:3 of the Administrative Code, 'medically necessary services' are services which are necessary for the diagnosis or treatment of disease, illness, or injury and without which the patient can be expected to suffer prolonged, increased or new morbidity, impairment of function, dysfunction of a body organ or part or significant pain and discomfort * * *."

Ohio Adm.Code 5101:3–4–28 discusses noncovered services and provides:

"The following physician services are noncovered:

" * * *

"(J) *Plastic or cosmetic surgery when surgery is performed for aesthetic purposes,* including, but not limited to: rhinoplasty, ear piercing, mammary augmentation or reduction, tattoo removal, excision of keloids, fascioplasty, osteoplasty (prognathism and micrognathism), dermabration, skin grafts, lipectomy, and blepharoplasty." (Emphasis added.)

In the February 3, 1999 administrative appeal decision, the hearing officer stated, "Abdominoplasty is normally considered cosmetic surgery unless it can be established that there is a medical necessity." This statement by ODHS shows that it presumed cosmetic surgery to be a noncovered service under Ohio Adm.Code 5101:3–4–28.

■ A review of the record shows that ODHS erred in this interpretation of Ohio Adm.Code 5101:3–4–28. This interpretation is contrary to the plain language of the regulation. Ohio Adm.Code 5101:3–4–28(J) summarily exempts only those cosmetic surgeries that are performed for aesthetic purposes. By presuming noncoverage of all cosmetic surgeries, ODHS erred as a matter of law.

■ However, ODHS's erroneous interpretation of Ohio Adm.Code 5101:3–4–28(J) proved to be harmless error. Rather than summarily dismissing appellant's request as purely cosmetic surgery, ODHS went on to make a factual determination as to whether or not the abdominoplasty would qualify for coverage as a medical necessity. Because ODHS conducted a medical-necessity analysis prior to denying appellant's request for authorization, any statement by ODHS as to the presumptive noncoverage of cosmetic surgeries proved to be harmless error. Therefore, appellant's first argument is without merit.

Next, appellant argues that ODHS erred as a matter of law by failing to provide a reasonable and objective standard for determining the medical necessity of abdominoplasty. Appellant argues that by merely limiting Medicaid coverage to procedures which are medically necessary, ODHS offers insufficient guidance in determining medical necessity. Appellant argues that the testimony of Higgins illustrates that ODHS based its coverage decisions on subjective impressions rather than objective criteria.

■ Appellant's argument is unsubstantiated. The Medicaid Act gives states considerable latitude in determining the scope of their respective Medicaid programs. *State v. United States Dept. of Health & Human Serv.* (C.A.6, 1985), 761 F.2d 1187, 1195; *Beal v. Doe* (1977), 432 U.S. 438, 444, 97 S.Ct. 2366, 2370–2371, 53 L.Ed.2d 464, 471–472. Within those parameters, the state has broad authority to define medical necessity. *Rush v. Parham* (C.A.5, 1980), 625 F.2d 1150, 1155. Accordingly, so long as the definition comports with the purpose of the Medicaid Act and the regulatory requirement that coverage be sufficient in amount, duration, and scope, each state is free to define medical necessity as broadly or as narrowly as required to fulfill the state's policy goals. *Thie v. Davis* (Ind.App.1997), 688 N.E.2d 182, 188; *Beal,* 432 U.S. at 444, 97 S.Ct. at 2370–2371, 53 L.Ed.2d at 471–472.

■ Ohio Adm.Code 5101:3–1–01(A) defines medical necessity under Ohio Medicaid law and recognizes that medical necessity is the fundamental concept underlying Ohio's Medicaid program. This section goes on to list and describe some factors and standards that ODHS is to consider in determining whether a procedure amounts to a medical necessity.

A thorough review of the record shows that the state has acted within its broad authority and discretion in defining medical necessity in Ohio Adm.Code 5101:3–

1-01(A). ODHS's definition of medical necessity comports with the underlying purpose of the Medicaid Act. ODHS used this definition and followed the guidelines listed therein in determining whether appellant qualified for prior authorization under Ohio Medicaid law. Therefore, appellant's second argument is without merit.

In appellant's final argument, appellant argues that ODHS erroneously held appellant to a heightened evidentiary standard whereby appellant was required to present objective documentation to establish a claim of medical necessity and prior authorization. Appellant argues that her physicians' opinions constitute sufficient evidentiary material to support her claim of medical necessity.

Appellant also asserts that ODHS erred by failing to give proper deference to the opinion of appellant's treating and examining physicians. Appellant argues that her treating and examining physicians, not ODHS's physicians, are in the best position to assess her medical condition. Appellant notes that her physicians conducted personal examinations and unanimously concluded that the abdominoplasty was a medical necessity, and, therefore, ODHS erred in not showing proper deference to the findings of these physicians that the abdominoplasty was a medical necessity.

In response to appellant's arguments, ODHS argues that it did not err in denying appellant's request for authorization. ODHS argues that it used the professional judgment of its committee, which is composed of physicians and surgeons, in determining that the abdominoplasty was not a medical necessity, but, rather, cosmetic surgery performed for aesthetic purposes.

ODHS also argues that Ohio Adm.Code 5101:3-1-31(C) requires that a physician submit medical information to support a claim for prior authorization and medical necessity of a requested service. ODHS argues that the burden of establishing medical necessity clearly falls upon the party requesting authorization, and, therefore, appellant failed to meet this burden.

Ohio Adm.Code 5101:3-1-31(C) provides:

"Completed prior authorization forms and supporting documentation should be mailed to the Ohio department of human services * * *."

A thorough review of the administrative appeal decision shows that ODHS's decision to deny appellant's request for prior authorization was based in large part on what ODHS considered to be a lack of objective documentation. In her January 4, 1999 decision, the hearing officer stated, "It was the recommendation of this committee that your request should be denied *as medical necessity was not documented.* * * *" (Emphasis added.) This language appears to imply

that the lack of documentation was a key basis for its decision. Similar language also appears in the February 3, 1999 administrative appeal decision:

"While opinions may have weight which must be considered, the regulation governing prior authorization requests (OAC 5101:3–1–31) requires submission of 'supporting documentation.' Testimony given by MOS indicated that there was no documentation of objective evidence relating back pain or other medical consequences to the existence of the excess skin. * * * It is reasonable to conclude that the hearing officer weighed the opinion testimony offered with the requirement that objective medical documentation be supplied and that there was little offered and that which was offered did not establish the medical necessity of the requested service."

These statements by ODHS appear to invoke a new evidentiary standard,[1] one currently not present under Ohio Medicaid law, whereby objective documentation is required to establish a claim of medical necessity and request for prior authorization. Contrary to the arguments asserted by ODHS, Ohio Adm.Code 5101:3–1–31 does not appear to establish how one proves his or her claim of medical necessity. The purpose of this regulation seems merely to provide a procedure for submitting forms that will be considered by the committee.

Moreover, even if Ohio Adm.Code 5101:3–1–31(C) required parties to submit documentation establishing their claims, appellant's physician did submit evidentiary documents to support her claim, including letters from examining physicians, a chart detailing appellant's back pain, which was submitted by Dr. Dix, the credentials of Dr. Bozian, and vivid photographs detailing appellant's excessive skin folds.

A thorough review of the record also shows that ODHS failed to give proper deference to the opinions of appellant's treating and examining physicians. As a general rule, it is well settled that treating physicians' opinions based on objective evidence should be accorded significant weight. *Jones v. Secretary, Health & Human Serv.* (C.A.6, 1991), 945 F.2d 1365, 1370, fn. 7. In addition, as noted by the Sixth Circuit Court of Appeals in connection with Social Security disability claims:

---

1. The state hearing decision also claimed to deny appellant's request in part because the information submitted did not rule out other causes of the stated upper and lower back pain. There is no support in the law for the proposition that supporting documentation must eliminate all other causes of an applicant's health problems. As will be discussed, appellant's physicians presented sufficient evidence showing that her excessive skin folds directly caused or contributed to her back pain.

"[M]edical opinions and diagnoses of treating physicians are * * * entitled to great weight. Indeed, it has long been the law that substantial deference—and, if the opinion is uncontradicted, complete deference—must be given to such opinions and diagnoses." *King v. Heckler* (C.A.6, 1984), 742 F.2d 968, 973.

There is no logical reason to differentiate or distinguish between the deference afforded to a treating or examining physician's opinion in the context of a claim for Social Security disability or Medicaid. This approach has been adopted in other jurisdictions that have addressed the question of the deference afforded to the treating or examining physicians' opinions in Medicaid claims. *Weaver v. Reagen* (C.A.8, 1989), 886 F.2d 194, 200; *Rush v. Parham,* (C.A.5, 1980), 625 F.2d 1150, 1156.

The basis for this presumption in favor of the treating physician's opinion is found in part in the legislative history of the Medicaid statute:

" 'The Committee's bill provides that the physician is to be the key figure in determining utilization of health services—and provide that it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determining the length of stay.' " *A.M.L. v. Dept. of Health, Div. of Health Care Financing* (Utah App.1993), 863 P.2d 44, 48, quoting S.Rep. No. 404, 89 Cong., 1st Sess. reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 1986.

The Medicaid statute and regulatory scheme create a presumption in favor of the medical judgment of the tending physician in determining the medical necessity of treatment. *Weaver,* 886 F.2d at 200.

Appellant presented the testimony of several treating physicians who had personally examined her. Her physician, Dr. Bozian, an expert in the field of obesity, examined appellant for two hours and testified that the excessive skin folds were a constant source of pain for appellant and that abdominoplasty constituted a medical necessity:

"I find it—I find that every single one of those characterizations [in Ohio Adm.Code 5101:3–1–01(A) which defines "medical necessity"] are exactly what we're discussing here, the prolonged or increased new morbidity, that is continued aggravation and—of the lumbosacral, cervical lumbar discomforts and disability that she has and dysfunction and that it will lead to impairment of her function with respect to being able to lift. For example, she has a nine-month-old child, she can't lift that child, and it will lead to further difficulties as far as her back and so forth are concern with the added weight of the panniculus, this fat pad, hanging with gravity pulling downward. And there's pain and discomfort because of the panniculus getting infected and inflamed with movement and

irritation which she wears a corset and they're sweaty, there's marked irritation and so forth underneath that skin. Fungus grows, bacteria grows, and leads to discomfort and pain and irritability." Tr. at 35.

Dr. Bozian also testified that the abdominoplasty, which Dr. Ruberg wished to perform on appellant, was a reputable, standard procedure for someone in appellant's condition.

Appellant has been evaluated by roughly four different professionals who have come to the unanimous conclusion that her pain is due to the excessive abdominal skin folds. Appellant produced uncontroverted evidence of medical necessity. There was no medical evidence presented to the contrary. ODHS's order denying appellant's request for prior authorization was not supported by reliable, probative, or substantial evidence, and, therefore, the trial court abused its discretion in affirming ODHS's decision to deny appellant's request for prior authorization of the abdominoplasty.

For the aforementioned reasons, appellant's assignments of error have merit.

The judgment of the trial court is hereby reversed in part and affirmed in part, and this cause is remanded for further proceedings in accordance with the law and consistent with this court's opinion, with instructions to reverse the decision of ODHS in regard to the abdominoplasty and remand the matter to ODHS for allowance of appellant's claim for abdominoplasty.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

Cox and Vukovich, JJ., concur.