MOCZNIANSKI, Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, Appellee.

[Cite as *Mocznianski v. Ohio Dept. of Job & Family Servs.*, 195 Ohio App.3d 422, 2011-Ohio-4685.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–10–1367.

Decided Sept. 16, 2011.

W. David Koeninger and Robert A. Cole, for appellant.

Michael DeWine, Attorney General, and Mark W. Fowler, Assistant Attorney General, for appellee.

SINGER, Judge.

{¶ 1} Appellant appeals the judgment of the Lucas County Court of Common Pleas that affirmed an administrative decision to reduce her Medicaid compensable services by 35 percent. Because we conclude that a state agency's refusal to disclose an integral component in the calculation of benefits denies appellant due process and that a county board's arbitrary allocation of "natural support" was improper, we reverse.

{¶ 2} Appellant, Kristina Mocznianski, is a 44–year–old woman with multiple medical conditions and severe developmental disability. She has Down syndrome, cerebral palsy, autism, dyslexia, and obsessive/compulsive disorder. She has an enlarged heart, degenerative joint disease, and regular seizures. She is incapable of preparing her own food. She cannot bathe, use the toilet, or walk without assistance.

{¶ 3} Appellant is also severely mentally retarded. Her highest IQ score, recorded at age 22, was 32. Since then, her IQ has steadily declined to the point that it is now estimated at below 20. Observation of this decline has resulted in an inferential diagnosis of dementia.

{¶ 4} It is undisputed that appellant requires constant assistance. Since the death of her parents, this has been provided by her brother, Terrence Mocznianski, who is her legal guardian and a certified care provider. A second nonrelated certified care provider is available in emergencies.

{¶ 5} Since 2005, and likely earlier, appellant's brother has been compensated for taking care of her through a Medicaid individual-option waiver administered by appellee, Ohio Department of Job and Family Services. This Medicaid waiver permits qualified individuals who might otherwise be institutionalized to be cared for in a frequently less-expensive home setting by a relative or nonrelative care givers. It is the amount of this compensation that is at issue here.

{¶ 6} From 2005 forward, appellant's brother was paid 16 hours per day (112 hours per week) for the services he provides.[1] Even though it appears from the record that appellant's brother is regularly called upon to assist her with bathroom functions overnight and must sleep near her should she experience a seizure, the eight-hour sleep period was uncompensated and counted as unpaid "natural support."

{¶ 7} The record is not fully developed on this point, but it appears that in 2005 the state was mandated to implement a measure to standardize the manner in which Medicaid funds are distributed among individual-option-waiver recipients. The tool the state adopted was the Ohio Developmental Disability Profile ("ODDP"). After the effective date for the program, applicants, with the help of relatives and providers, are required to complete a ten-page questionnaire concerning the waiver applicant's mental and physical condition and his or her living arrangements. This data is submitted to appellee and input into a computer program that ascribes a category, based upon the recipient's county of residence, and one of nine funding ranges within that category. See Ohio Adm.Code 5101:3–41–12(B)(6), Ohio Adm.Code 5123:2–9–06, and appendices.

{¶ 8} Once a funding range is set, it is the responsibility of the county developmental-disabilities board to create an individual service plan to assure that the recipient's health and welfare needs are met. When the service plan is completed, the county board must calculate the one-year cost of providing the services enumerated in the plan. If that cost is within the range established by the ODDP, the county board need only issue a payment authorization for the defined services. Ohio Adm.Code 5123:2–9–06(C)(7).

{¶ 9} If the plan cost exceeds the ODDP cost range, however, the waiver applicant must apply to the Ohio Department of Mental Retardation and Developmental Disabilities for prior authorization of services. If certain criteria are met, the developmental-disabilities department may authorize the services requested. See Ohio Adm.Code 5101:3–41–12(F) through (G). If the developmental disabilities-department does not authorize services, the matter goes to appellee to determine whether the requested services are medically necessary. Id. at (H) through (I). Appellee must decide whether to grant or deny the prior authorization within ten business days. Id. at (J). If the request is denied, the applicant may appeal in a state hearing provided by appellee. The results of that hearing are binding unless reversed or modified in a further appeal to appellee's director or a court of common pleas. R.C. 5101.35(B).

---

1. The regulations and the parties alternatively use hours, quarter-hour units, and dollars when referring to the compensation rendered. For simplicity, we shall convert these references to hours where possible.

{¶ 10} According to the facts stated by the common pleas court in a prior appeal, before November 2005, appellant's funding was regularly near the level of 112 hours per week. In 2005, the ODDP permissible funding range was established at between \$19,339 and \$33,771, which translates to a maximum funding for 37 hours per week. Nevertheless, between 2005 and May 2008, appellee granted appellant prior authorization to continue at the level of 112 hours per week.

{¶ 11} In the autumn of 2007, however, the county board began to voice concern about the disparity between the ODDP range and the prior-authorized hours. The board proposed to reduce prior-authorized hours from 112 to 77. The decrease represented time that appellant could spend in day habilitation. See R.C. 5126.01(B). The board eventually abandoned this position and recommended that prior authorization continue at the 112–hour level on receipt of a psychological evaluation that concluded that appellant would be unable to successfully cope outside a family home environment. The developmental-disabilities department approved the prior authorization at the same level, but only until May 12, 2008.

{¶ 12} In May, another ODDP resulted in the same service range. Again the county board attempted to reduce hours of home care in favor of day services. Appellant rejected day services and filed a prior-authorization request asking for payment for 24–hour care, 168 hours per week. On submission, the developmental-disabilities department recommended denial of the request, and appellee denied the request on the ground that it was not medically necessary. Meanwhile, after a second psychological assessment confirmed that appellant "may not be able to successfully participate in a day program," the county board advised appellant that it would support 67 hours per week in lieu of day care. Hours beyond that level would be considered "natural (unpaid) support." When appellant did not respond, the county board adopted the 37 hours allowable by the ODDP.

{¶ 13} Appellant appealed both the denial of her 168–hour–prior–approval request and the reduction of her approved hours from 112 to 37. After a state hearing, appellee denied appellant's appeal on all grounds. This was followed by an administrative appeal that affirmed the denial of appellant's 168–hour–prior–approval request, but reversed on the reduction in service hours. According to the decision, the service plan presented acknowledged that appellant needs 24–hour–a–day care, but did not explain how the remaining 133 hours per week would be covered. The order directed the county board to develop a new service plan to meet appellant's needs. This decision was eventually affirmed in an R.C. 119.12 appeal to the court of common pleas. *Mocznianski v. Ohio Dept. of Jobs & Family Servs.* (Sept. 14, 2009), Lucas C.P. No. CI 08–9112.

{¶ 14} As the appeal for the 2008–2009 denial of prior authorization was being considered, appellant applied for prior authorization for the 2009–2010 cycle. Again appellant requested 168 hours for prior authorization. The ODDP questionnaire and result was unchanged, again resulting in a funding range capped at 37 hours. This time, however, the county board's service plan for appellant included 35 hours in lieu of day habilitation, which, added to the 37 maximum hours set by the ODDP, resulted in care-provider compensation for 72 hours per week, a 40–hour reduction from the 112 hours historically awarded. These 40 hours were to be considered unpaid natural support.

{¶ 15} Appellant's request for 168 hours' prior authorization was again denied. Appellant administratively appealed this denial and the reduction of hours in the service plan. Appellant also sought to challenge the scoring of the ODDP, but was told at each level of appeal that the scoring of the ODDP was not an appealable issue. When appellant failed to prevail on all issues at each level of the administrative appeal, she further appealed to the common pleas court. On December 1, 2010, the common pleas court affirmed the administrative-appeal decisions in every respect. From this judgment, appellant now brings this appeal. Appellant sets forth the following three assignments of error:

{¶ 16} "I. The common pleas court erred as a matter of law in relying on Judge Cook's 2009 decision as the basis for its decision.

{¶ 17} "II. The common pleas court erred as a matter of law in deferring to ODJFS' interpretation of its own rules.

{¶ 18} "III. The common pleas court erred as a matter of law in holding that the Lucas County board had provided sufficient justification for its decision to reduce Kristina's funding."

{¶ 19} "A party adversely affected by an order of an administrative agency in an adjudicatory proceeding may appeal that order to an appropriate common pleas court. R.C. 119.12. If, on consideration of the evidence of the entire administrative record and such additional evidence as may be admitted, the court finds that the administrative order is supported by 'reliable, probative and substantial evidence and is in accordance with the law,' the court must affirm the order. Id.; *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748; *Holman v. Ohio Dept. of Human Serv.* (2001), 143 Ohio App.3d 44, 48, 757 N.E.2d 382. Absent such findings, however, the common pleas court may 'reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with the law.' R.C. 119.12.

{¶ 20} "An administrative review is a hybrid: neither strictly of law nor of law and fact. While not a trial de novo, the common pleas court must nonethe-

less read and consider all the evidence offered by both sides and must appraise all of the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. Even so, the court may not substitute its judgment for that of the administrative agency, but must defer to administrative resolution of evidentiary conflicts. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 21} "Appellate review of the common pleas court decision on issues of law is plenary. *Holman*, 143 Ohio App.3d at 49, 757 N.E.2d 382, citing *Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835. On questions of fact, however, an appellate court's review is far more circumscribed. The common pleas court must be affirmed unless its decision is the result of an abuse of discretion. Id., citing *Lorain Cty. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264. An abuse of discretion is more than an error of judgment. The term connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 168–169, 559 N.E.2d 1301." *Hummel v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 776, 2005-Ohio-6651, 844 N.E.2d 360, ¶ 20–22.

## I. Due Process

{¶ 22} We will discuss appellant's first two assignments of error together. In her first assignment of error, appellant maintains that the trial court in the present matter erred in relying on the decision of Judge Cook in the prior appeal to conclude that appellant received all process that was due in the reduction of her service hours. In her second assignment of error, appellant asserts that the trial court erred in giving deference to appellee's interpretation of an administrative rule that appellee concluded barred state-hearing consideration of the validity of the ODDP program.

{¶ 23} In this appeal, appellant has abandoned any contest of the decision denying her request for prior approval of 168 hours' compensation. Her arguments focus only on the decision of the county board to cut compensated services to her from 112 to 72 hours per week. She starts with the simple proposition that her condition and circumstances are unchanged from 2005, when it was deemed medically necessary that she receive 112 hours per week of care. The parties agree that appellant's condition has not changed since 2005; at least, it has not improved.

{¶ 24} Because of the static nature of her condition, appellant questions the validity of the ODDP, suggesting that if her 2005 classification was proper, an instrument that diminishes that classification by two-thirds must be suspect.

Appellee has refused to permit appellant to examine the ODDP program. Citing Ohio Adm.Code 5101:6–3–01(A), appellee insists that the ODDP is not subject to appeal. Each of the administrative appeals and the common pleas court has upheld appellee's position on this issue. Appellant insists that she is denied due process of law when she is prohibited access to the basis of a decision to reduce her benefits.

{¶ 25} Appellee responds that the ODDP is a valid instrument in that any questionnaire marked exactly as that of appellant will be scored to result in exactly the same funding range as that set for appellant. Moreover, appellee insists, the ODDP is irrelevant in this matter because the benefit award appellant contests is not determined by the ODDP process, but by the prior approval process.

{¶ 26} With respect to appellant's assertion that the decision of the common pleas court in the present matter improperly relied on the decision of the common pleas court in the prior case, appellant prevails in form, but not necessarily substance.

{¶ 27} What either common pleas decision said of the denial of 168–hour compensation is not at issue here. Because the remainder of the first decision was an affirmation of the administrative decision to recalculate the service plan for prior approval, any discussion of the ODDP contained in that decision was unnecessary and any reliance on that discussion in the second decision as dispositive would be unwarranted. In any event, neither of these decisions binds this court on a question of law.

{¶ 28} Appellee insists that the ODDP should not be considered in this appeal because what is being appealed is in the purview of the prior-approval process rather than the ODDP. This is a fallacious argument. If the ODDP had categorized appellant within range seven rather than range two, see Ohio Adm.Code 5123:2–9–06, Appendix C, the 112 hours of care appellant had been receiving would have fallen within the range of services that may be approved by the county board without resort to prior approval. Consequently, it cannot be said that the ODDP is irrelevant in this case.

{¶ 29} As to the validity of the ODDP, appellee's argument that the program scores identical responses identically is not persuasive. It is the weight the program gives to dissimilar responses that is important. If, for example, the ODDP program was written to score all applicants who are male into category eight and all applicants who are female as category two, other things being equal, this would be unlawfully discriminatory. Although appellee maintains that the ODDP program takes into consideration all of the statutory factors involved in distributing waiver services, without examining the weight given to each of those

factors, it is impossible to ascertain whether something is amiss. This, appellant insists, is the point.

{¶ 30} Concerning the administrative rule, Ohio Adm.Code 5101:6–3–01(A) provides:

{¶ 31} "The right to a state hearing is limited to actions by the Ohio department of job and family services (ODJFS), the local agency, or an agent of ODJFS or the local agency. A hearing need not be granted when a change in state or federal law, or local agency policy adopted pursuant to options authorized in state law, requires automatic adjustments of benefits for classes of recipients. If the reason for the request is the misapplication of the change to the appellant's individual circumstances, hearing rights exist."

{¶ 32} Although appellee does not specifically articulate its interpretation of the rule, its reliance on this section would suggest that it believes that the ODDP constitutes a change in law that requires an adjustment of benefits and is, therefore, not subject to a hearing. While there may be some dispute as to the validity of this interpretation, it is not so errant as to deny the administrative agency the deference to which it is entitled in interpreting its own rules. See *Leon v. Ohio Bd. of Psychology* (1992), 63 Ohio St.3d 683, 687, 590 N.E.2d 1223.

{¶ 33} This is not, however, the end of our consideration. A rule or the interpretation thereof may not exceed the authority provided by its enabling legislation. The enabling legislation may not exceed the bounds of the state or federal constitutions.

{¶ 34} Medicaid regulations require that state hearings on benefits, "must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970) * * *." Section 431.205(d), Title 42, C.F.R. *Goldberg*, at 268, holds that when the state proposes to terminate or reduce benefits, a recipient must have timely and adequate notice that details the reason for the proposed modification of benefits, "and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important [when recipients challenge proposed actions] as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases." When government action seriously injures an individual and the reasonableness of the action depends on a finding of fact, "the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Id. at 270, quoting *Greene v. McElroy* (1959), 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377. Moreover, "the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing." Id. at 271, citing *Ohio Bell Tel. Co. v. PUCO* (1937), 301

U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, and *United States v. Abilene & S. Ry. Co.* (1924), 265 U.S. 274, 288–289, 44 S.Ct. 565, 68 L.Ed. 1016.

{¶ 35} Whether in an appeal of the funding range set by the ODDP or an appeal of a denial of prior approval of a services plan that starts with the ODDP, it is clear that the instrument is a decisive measure. It is simply unimaginable that the operation of such a device should not be disclosed to an individual whose benefits are in jeopardy by its application. In our view, maintaining the operation of the ODDP as a secret is not in conformity with the *Goldberg* dictate that evidence be disclosed and that all decisions regarding a recipient's eligibility must be based solely on evidence adduced at a hearing. Accordingly, appellant's first and second assignments of error are well taken.

## II. "Natural Supports"

{¶ 36} In her final assignment of error, appellant complains that the county board's insistence that her caregiver provide 40 hours per week in "natural (unpaid) support" is nothing more than a funding cut for which no standard and no justification was made in the hearing. On examination in the hearing, the county board representative testified that for determining the expectation of natural support, there is "no magic formula." Appellant insists that absent some criteria, the county board is free to impose its own arbitrary result without regard to principle.

{¶ 37} According to appellant, appellee's argument that appellant's caregiver should not be compensated for time during which he conducts his own affairs is persuasive only if appellee can demonstrably report how much of appellant's caregiver's time is used for his personal endeavors. Picking 40 hours per week out of the air as an amount of personal time for which there will be no compensation is an arbitrary act, appellant insists.

{¶ 38} Consideration of "natural supports" as part of a waiver recipient's individual service plan is directed in the Social Security Act, which provides:

{¶ 39} "Plan requirements.—The State ensures that the individualized care plan for an individual—

{¶ 40} "(I) is developed—

{¶ 41} "(aa) in consultation with the individual, the individual's treating physician, health care or support professional, or other appropriate individuals, as defined by the State, and, where appropriate the individual's family, caregiver, or representative; and

{¶ 42} "(bb) taking into account the extent of, and need for, any family or other supports for the individual * * *." 42 U.S.C. 1915(i)(1)(G)(ii)(I).

{¶ 43} The U.S. Department of Health and Human Services interpreted this provision to mean:

{¶ 44} "[T]he Act requires that the development of the plan of care take into account the extent of, and need for family or other supports for the individual, and * * * requires that the individualized plan of care identify needed services. We interpret these provisions to indicate that natural supports are explicitly included in the plan of care. This means that individuals with equivalent need for support but differing levels of family or other natural supports may be authorized for different levels of [home services]. In the context of person-centered planning and consultation with natural supports, we conclude that the statute requires that the plan of care should neither duplicate, nor compel, natural supports." Proposed Rules, Center for Medicare and Medicaid Services, 73 F.R. 18676, 18681.

{¶ 45} While this proposed rule, or indeed any mention of "natural supports," was not adopted into rule, this statement is still a reasonable interpretation of the statute. As a result, we conclude that compulsion of "natural supports" is antithetical to law. By the same token, however, the county board is directed to consider those "natural supports" that are already in place.

{¶ 46} In this matter, we have already noted that appellant's caregiver has throughout the period for which evidence has been submitted provided natural support for the time during which appellant sleeps. The county board's assertion that appellant's caregiver must, during his remaining 112 waking hours, attend to some of his own personal affairs is not unreasonable. Quantification of the amount of the caregiver's time given over to such activities, however, is problematic. The county board may not conjure a number from thin air without any basis in fact. It must provide a reasonable basis for its allocation or risk improperly compelling natural support.

{¶ 47} Moreover, even though not compensating appellant's brother for some additional period of natural support may be appropriate, there is a question of whether appellant's needs will be met during the time this occurs. The parties agree that appellant is in need of some degree of supervision at all times. The question of caregiver fatigue, raised by one of the psychologists, is a valid concern. This is a question that should be addressed when drafting appellant's next service plan.

{¶ 48} Appellant's third assignment of error is well taken.

{¶ 49} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to that court for further

proceedings in conformity with this decision. It is ordered that appellee pay court costs pursuant to App.R. 24.

Judgment reversed.

Osowik, P.J., and Handwork, J., concur.

