2015 UT App 284

# THE UTAH COURT OF APPEALS

INTERMOUNTAIN HEALTHCARE,
Petitioner,

*v.*

OPTUMHEALTH AND SALT LAKE COUNTY DIVISION OF BEHAVIORAL
HEALTH SERVICES,
Respondents.

Opinion
No. 20140462-CA
Filed November 27, 2015

Original Proceeding in this Court

Catherine M. Larson, Attorney for Petitioner

Kimberly Neville and Kyle E. Witherspoon,
Attorneys for Respondent OptumHealth

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGES GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

BENCH, Senior Judge:

¶1    Intermountain Healthcare (IHC) seeks review of the Department of Health, Division of Medicaid and Health Financing's (DMHF) decision that IHC is entitled to payment for only three of a patient's eighteen days of inpatient psychiatric care at an IHC facility. We set aside DMHF's decision and remand for further proceedings consistent with this opinion.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2      The patient is a Medicaid recipient who was involuntarily committed to an IHC facility from March 31, 2013, to April 17, 2013, for inpatient psychiatric care following a suicide attempt. Her presenting symptoms included an unstable mood, depression, irritability, and untreated bipolar disorder. The patient's care during her inpatient stay included continuous fifteen-minute safety checks, several medication changes, participation in group therapy, and electroconvulsive therapy. She expressed suicidal thoughts to medical staff throughout her stay and, at times, indicated that she felt she would not be safe if she were not in a hospital setting.

¶3      OptumHealth is a private entity that pays care providers for mental health services rendered to Salt Lake County Medicaid patients. Payment for a Medicaid client's inpatient mental healthcare is based on a guideline that OptumHealth has established in accordance with Utah Medicaid policies (the Guideline). Based on the Guideline and applicable provisions of the Utah Administrative Code, OptumHealth determined that the patient's treatment after April 1 was not medically necessary and that, as a result, IHC was entitled to payment only for the treatment it provided the patient on April 1.[2]

¶4      IHC initiated a Medicaid appeal with DMHF. An administrative law judge (ALJ) conducted a formal hearing, during which the patient's treating physician and an independent medical reviewer, also a physician, testified. The medical reviewer's testimony was based exclusively on his consideration of the treating physician's notes and the patient's relevant medical records. The ALJ recommended that IHC be

---

2. Because the patient's Medicaid eligibility began on April 1, 2013, IHC is not entitled to Medicaid payment for any of the patient's treatment rendered on March 31, 2013.

paid for two additional days of the patient's treatment but concluded that the remainder of the patient's inpatient care was not medically necessary. Specifically, the ALJ found that the patient was admitted into acute inpatient care on March 31, 2013, based on her "recent and serious suicide attempt" but that she no longer posed an "imminent risk of harm to self or others after April 1, 2013." The ALJ found that forty-eight hours of inpatient observation was medically necessary to ensure that the patient's "pattern of improvement continued . . . given her mood swings and impulsivity." Accordingly, the ALJ recommended that OptumHealth pay IHC for the patient's treatment on April 1 plus two additional days of the patient's inpatient stay—April 2 and April 3, 2013. DMHF issued a Final Agency Order adopting the ALJ's recommendation. IHC seeks review of DMHF's decision.

ISSUES AND STANDARDS OF REVIEW

¶5      IHC argues that the ALJ misapplied the Guideline in reaching her recommendation and, in turn, that DMHF erred when it awarded only partial payment to IHC for the patient's care. IHC also challenges the propriety of the ALJ's reliance on the medical reviewer's testimony over the treating physician's testimony.

¶6      The Utah Administrative Procedures Act provides that an "appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by[, inter alia,] . . . [an] agency action [that] is . . . an abuse of the discretion delegated to the agency by statute." Utah Code Ann. § 63G-4-403(4)(h)(i) (LexisNexis 2014); *see also Murray v. Labor Comm'n*, 2013 UT 38, ¶ 19, 308 P.3d 461. Because "the legislature has, by virtue of [Utah Code] section 26-18-2.3(1), explicitly granted [DMHF] discretion to establish criteria concerning Medicaid reimbursement," "we review [DMHF's] decision denying

Medicaid reimbursement for medical care that [IHC] provided [the patient] . . . for reasonableness and rationality." *See South Davis Community Hosp., Inc./Romero v. Department of Health*, 869 P.2d 979, 981–82 (Utah Ct. App. 1994); *accord Conley v. Department of Health*, 2012 UT App 274, ¶ 8, 287 P.3d 452; *see also* Utah Code Ann. § 26-18-2.3(1) (LexisNexis 2013). However, "the Agency's interpretation of the federal and state statutes and regulations that govern Utah's Medicaid Program are questions of law that we review for correctness, according no particular deference to the agency decision." *Conley*, 2012 UT App 274, ¶ 7 (citation and internal quotation marks omitted).

ANALYSIS

¶7     IHC argues that the ALJ "erred in her application of the [Guideline] in that she only considered subsection[s] (1)(a)(i), (1)(a)(ii), and (1)(b) and inaccurately concluded that such subsections warrant inpatient psychiatric care only if the patient exhibits 'overt' and 'active suicidal ideation for the[ir] entire stay.'" (Second alteration in original.) IHC argues that it was "incorrect for [the ALJ] to apply an 'overt' and 'active' suicide standard to this case" and that "it was also incorrect for her to limit her analysis to just whether [the patient] exhibited suicidal ideation during the entire hospital stay." Last, IHC contends that the ALJ failed to provide "a reasoned basis for declining to" give deference to the patient's treating physician. *See A.M.L. v. Department of Health*, 863 P.2d 44, 48 (Utah Ct. App. 1993). We agree with IHC.

¶8     Under the Utah Medicaid Program, "'medically necessary service'" means

> (a) it is reasonably calculated to prevent, diagnose, or cure conditions in the recipient that endanger life, cause suffering or pain, cause physical deformity or malfunction, or threaten to cause a handicap; and

(b) there is no other equally effective course of treatment available or suitable for the recipient requesting the service that is more conservative or substantially less costly.

Utah Admin. Code R414-1-2(18). According to the Guideline, "Acute Inpatient" care "is for the active treatment of a mental health condition" and "Active Treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare." The Guideline provides,

> The following criteria must be met[:]
>
> 1      The symptoms of a mental health condition require immediate care and treatment to avoid jeopardy to life or health. Examples include the following[:]
>
> a      The member is at imminent risk of harm to self or others as evidenced by, for example[,]
>
> i      The member has made a recent and serious suicide attempt,
>
> ii      The member is exhibiting current suicidal ideation with intent, realistic plan and/or available means, or other serious life threatening, self-injurious behavior(s),
>
> iii      The member has recently exhibited self-mutilation that is medically significant and/or potentially dangerous,
>
> iv      The member has made recent and seriously physically destructive acts that indicate a high risk for recurrence and serious injury to self [or] others[.]

> b        There has been a deterioration in the member's psychological, social, occupational/educational, or other important area of functioning, and the member is unable to safely and adequately care for him/her self[.]
>
> c        There is an imminent risk that severe, multiple and/or complex psychological stressors will produce enough distress or impairment in psychological, social, occupational/educational, or another important area of functioning to undermine treatment at a lower level of care[.]

Furthermore, the Guideline indicates that it should be "used in conjunction with the Continued Service [G]uideline when assessing the need for a continuing stay." The Continued Service Guideline states, "It is anticipated that as the severity of a member's condition changes, the member's condition will eventually no longer meet the criteria for the current level of care and the member will be safely transitioned to another level of care."

¶9        Here, the patient was admitted into acute inpatient care based on her "recent and serious suicide attempt." The ALJ's decision quotes Guideline subsections (1)(a)(i), (1)(a)(ii), and (1)(b), as well as the Continued Service Guideline. The ALJ found that the patient did not pose an "imminent risk of harm to self or others after April 1, 2013." This conclusion hinges on the ALJ's interpretation of the Guideline as requiring the patient to maintain "active suicidal ideations for the entire stay," minus forty-eight hours of observation time.

¶10        However, the Guideline and the Continued Service Guideline do not mandate that the patient maintain the *same* symptoms for which she was initially admitted into acute inpatient care—i.e., active suicidal ideation with a plan. While active suicidal ideation with a plan is an example given in the

Guideline of a mental health condition warranting acute inpatient care, it is not, in and of itself, the criteria by which the necessity for acute inpatient care is to be measured under the Guideline or the Continued Service Guideline.

¶11    Moreover, the examples in the Guideline pertaining to suicide are not specifically limited to active suicidal ideation with a plan, as the ALJ's interpretation suggests. Rather, the Guideline provides that acute inpatient care is medically necessary if, "for example[,] . . . [t]he member is exhibiting current suicidal ideation with intent, realistic plan and/or available means, *or other serious life threatening, self-injurious behavior(s)*." (Emphasis added.) Here, the treating physician testified that the patient's passive suicidal ideation still presented a sufficient risk to her own safety. He testified that his notes describing the patient as having "background" or "passive" suicidal ideation indicated that her "suicide risk" was "outside of a contained, protective setting," meaning that she was not looking "for ways to harm herself in the hospital, but later on." He explained that someone with "passive suicide ideation or active without a plan[] can . . . still be at imminent risk of harm to themselves," "[p]articularly in the context of [this patient's] . . . mood swings that [were] occurring fairly frequently with regularity and consistently through much of her stay." The treating physician also testified that the patient's suicidal ideation was only one of several reasons for which he considered the entire length of the patient's acute inpatient care to be medically necessary. He testified that his "decision to discharge [the patient]" was based only partly "on her representation of what her suicidal ideation was." And he opined that prior to her release date, the patient "would have had difficulty functioning outside of the hospital setting."[3]

---

3. We note that the treating physician's testimony appears to comport with the examples provided in Guideline subsections (1)(a), (1)(b), and (1)(c). OptumHealth asserts, and we agree, that

(continued…)

¶12    In making her recommendation to deny IHC's request for reimbursement for the patient's stay beyond April 3, 2013, the ALJ relied on the medical reviewer's testimony that the patient's passive suicidal ideation and mood swings were insufficient to justify the patient's ongoing acute inpatient care as medically necessary. The ALJ provided no "reasoned basis" "consistent with the purposes of the Medicaid Act" for her decision to not give deference to the treating physician's testimony on these issues. *See A.M.L. v. Department of Health*, 863 P.2d 44, 48 (Utah Ct. App. 1993) (citation and internal quotation marks omitted). Several courts have required "Medicaid agencies to recognize a presumption in favor of the medical judgment of the attending physician in determining the medical necessity of treatment." *Id.* (citation and internal quotation marks omitted). This court has previously held that, if the agency "elects not to give deference to the testimony given by the treating physician, the agency should provide a reasoned basis for declining to do so which is consistent with the purposes of the Medicaid Act." *Id.* (citation and internal quotation marks omitted); *cf. Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) ("[T]he reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." (citation and internal quotation marks omitted)). The ALJ erred in rejecting the treating physician's testimony and his treatment notes absent an explanation for this deviation from our established rule. *Cf. Frey*, 816 F.2d at 515 ("[F]indings of a nontreating physician

---

(…continued)

the Guideline does not require "administrative law judges to consider all possible scenarios under which inpatient treatment might be appropriate." However, consideration of "all possible scenarios" under the Guideline is distinct from consideration of the relevant examples explicitly provided in the Guideline.

based upon limited contact and examination are of suspect reliability.").

¶13 The ALJ abused her discretion by interpreting the Guideline in a way that limited the plain language of the acute inpatient criteria and by failing to explain why the treating physician's opinion did not deserve deference. As a result, the ALJ's recommendation was not reasonable and rational. *See South Davis Community Hosp., Inc./Romero v. Department of Health*, 869 P.2d 979, 981–82 (Utah Ct. App. 1994). Accordingly, DMHF's decision to adopt the ALJ's recommendation was also not reasonable and rational. *See id*.

CONCLUSION

¶14 Because the ALJ misconstrued the Guideline and did not provide a reasoned basis for declining to give deference to the treating physician's opinion, her recommendation was not reasonable or rational. Accordingly, we set aside DMHF's decision to adopt the ALJ's recommendation and remand for further proceedings consistent with this opinion.[4]

───────────

4. We decline IHC's invitation to issue an order demanding that OptumHealth pay IHC for all of the inpatient psychiatric care it rendered to the patient from April 1 to April 17, 2013. Additionally, "[w]e do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached." *See Allred v. Allred*, 797 P.2d 1108, 1112 (Utah Ct. App. 1990).