IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Nicholas Conley and Patty Olguin, | ) | OPINION |
| | ) | |
| Petitioners, | ) | Case No. 20100496-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 27, 2012) |
| Department of Health, Division of | ) | |
| Medicaid and Health Financing, | ) | 2012 UT App 274 |
| | ) | |
| Respondent. | ) | |

-----

Original Proceeding in this Court

Attorneys:    Robert B. Denton and Laura K. Boswell, Salt Lake City, for Petitioners
         Mark L. Shurtleff and Nancy L. Kemp, Salt Lake City, for Respondent

-----

Before Judges Thorne, McHugh, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Petitioners Nicholas Conley and Patty Olguin seek judicial review of the Final Agency Order of respondent Department of Health, Division of Medicaid and Health Financing (the Division), which denied Petitioners' Medicaid benefits for speech augmentative communication devices (SACDs).[1]  We determine that the Agency abused

---

[1]The Utah Medicaid Program refers to an augmentative or alternative communication device as a speech augmentative communication device.  The Utah Medicaid Provider Manual defines SACD as an "electronic or non-electronic aid[],

(continued...)

its discretion in determining that the Division is not required to provide coverage of SACDs to non-pregnant individuals age twenty-one and older under the Utah Medicaid Program.

## BACKGROUND

¶2     The underlying facts in this case are undisputed. Conley, who was twenty-two years old in 2010 when the Division denied his request for an SACD, suffers from spastic quadriplegia related to cerebral palsy. According to the Administrative Law Judge's (ALJ) finding, Conley "is not able to produce any intelligible words due to motor difficulties secondary to his medical diagnosis and he uses an [augmentative speech device] to communicate." Conley's SACD is more than seven years old, is not functioning properly, and has a recent history of needing repairs. Because the cost of repairing the device far exceeds the cost of a new device, Conley's medical providers recommended that Conley receive a new SACD to "meet [his] communication needs." Conley requested prior authorization for the purchase of a new SACD, which the Division denied.

¶3     Olguin, who was thirty-eight in 2010 when the Division denied her request for an SACD, was diagnosed with multiple sclerosis as a child. As the ALJ found, "in 2002, [Olguin] suffered a stroke during a surgical operation to her leg which caused severe dysarthia, a motor speech disorder resulting from a neurological injury." Olguin's medical providers determined that an SACD is "necessary to meet her functional communication needs." Olguin also requested prior authorization for an SACD, which the Division likewise denied.

---

[1](...continued)
device[], or system[] that correct[s] expressive communication disability." The Utah Medicaid Provider Manual, § 2–Speech-Language Services, at 9 (Jan. 2012). The Fifth Circuit has defined an augmentative communication device as "a computerized instrument that produces pre-programmed voice-synthesized sentences." *Fred C. v. Texas Health & Human Servs. Comm'n*, 117 F.3d 1416, *1 (5th Cir. 1997) (per curiam). Thus, an SACD is a piece of equipment that produces speech. SACDs can be used by individuals who have the cognitive ability to know what they want to express but lack the physical ability to produce intelligible speech.

¶4     The Division's explanation for the denial of both Petitioners' requests was that the "[s]ervices requested are not a covered benefit."  Petitioners sought further agency action from the Division and later agreed to have their cases consolidated.  In her recommended decision, the ALJ concluded that the Division's denial of SACD benefits to Petitioners met the reasonable standards requirement under the Medicaid Act, which requires that all Medicaid recipients be treated equally and under reasonable, non-discriminatory standards, *see* 42 U.S.C. § 1396a(a)(17) (2012)[2] ( "A State plan for medical assistance must . . . include reasonable standards.").  The ALJ also concluded that the Utah Medicaid Program, which covers SACDs only for pregnant individuals and for individuals under the age of twenty-one, does not violate the Medicaid Act.  The ALJ reasoned that the Medicaid Act and the federal regulations implementing the Act do not specifically mention SACDs as a mandatory benefit.  Additionally, the ALJ concluded that the provision of the Utah Medicaid Program allowing SACDs as early and periodic screening, diagnostic, and treatment services to pregnant women and individuals under the age of twenty-one, effectively nullifies the inclusion of SACDs within any other more general provision.  The ALJ explained that both federal regulations and case law allow the Division discretion to employ a "utilization control procedure" in order to deny coverage of SACDs to non-pregnant individuals age twenty-one and older.  *See* 42 C.F.R. § 440.230(d) (2012); *Hern v. Beye*, 57 F.3d 906, 910 (10th Cir. 1995).

¶5     In its Final Agency Order, the Division Director (the Agency) adopted the ALJ's recommended decision in its entirety, and this petition for review followed.


ISSUE AND STANDARD OF REVIEW

¶6     For purposes of this appeal, the Division does not dispute that Petitioners are eligible Medicaid recipients.[3]  The Division also does not dispute that SACDs are

---

[2]Unless otherwise indicated, we cite the current version of the United States Code and the Code of Federal Regulations throughout this opinion.

[3]There are several categories of eligible Medicaid recipients, including those who are categorically needy and those who are medically needy.  Specifically, the term "categorically needy" refers to an individual who is receiving financial assistance pursuant to the State's approved plans under the Social Security Act, or is in need

(continued...)

medically necessary for Petitioners.  Thus, the only issue before us is whether the Agency abused its discretion in determining that the Division is not required under the Utah Medicaid Program to provide coverage of SACDs to non-pregnant individuals age twenty-one and older.  This issue requires us to resolve the related question of whether the Division's policy denying such coverage to non-pregnant individuals age twenty-one and older violates the Medicaid Act.[4]  Because the Agency interpreted and applied both state and federal law, we review the Final Agency Action under multiple standards.

¶7     We start by reviewing the Agency action pursuant to the Utah Administrative Procedures Act (UAPA) and "shall grant relief [to Petitioners] only if" we conclude, to the extent relevant here, that they have been "substantially prejudiced" "by the [Agency's] erroneous[] interpret[ation] or appli[cation of] the law," or "the [A]gency action is . . . arbitrary or capricious."  Utah Code Ann. § 63G-4-403(4)(d), (h)(iv) (2011).  In making that determination, we generally interpret questions of law for correctness.  *See id.* § 63G-4-403(4)(d); *see also Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 12, 271 P.3d 192, *cert. granted*, 280 P.3d 421 (Utah 2012).  Similarly, the Agency's interpretation of the

---

[3](...continued)
under the State's standards for financial eligibility, and includes aged, blind, disabled, or needy with dependent children.  *See* 42 C.F.R. § 435.4.  The term "medically needy" includes the aged, blind, and disabled, and refers to those individuals who do not qualify for some forms of federal assistance, but who nonetheless lack the resources to obtain adequate medical care.  *See id.*  In this case, though the Division recognizes that "both Petitioners are financially qualified to receive Medicaid," it is unclear whether Petitioners are qualified as "categorically needy" or "medically needy" Medicaid recipients.  For purposes of this appeal, and because Utah provides services to both, we assume, as the parties seem to assume, that Petitioners are classified as categorically needy.  *See generally* Utah Admin. Code R414-1-2(3), (19) (defining both terms); *Bleazard v. Utah Dep't of Health*, 861 P.2d 1048, 1050 (Utah Ct. App. 1993) (explaining the difference between categorically needy and medically needy for purposes of receiving Medicaid benefits).

[4]The Division moves to strike the addendum to Petitioners' reply brief.  Because the information contained in the addendum was not presented in the administrative proceedings, it is not part of the record on appeal.  Accordingly, we grant the Division's motion to strike and do not consider Petitioners' reply brief addendum.  *See State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279.

federal and state statutes and regulations that govern Utah's Medicaid Program are questions of law that we review "for correctness," according "no particular deference to the agency decision." *Bleazard v. Utah Dept. of Health*, 861 P.2d 1048, 1049 (Utah Ct. App. 1993) (internal quotation marks omitted). "[G]eneral questions of law include constitutional questions, rulings concerning an [administrative] agency's jurisdiction or authority, interpretations of common law principles, and interpretations of statutes unrelated to the agency." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 18, 38 P.3d 291 (internal quotation marks omitted); *see also Morton Int'l Inc. v. Auditing Div. of Utah State Tax Comm'n*, 814 P.2d 581, 585 (Utah 1991). Further, a "state agency's determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency." *Amisub (PSL), Inc. v. State of Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 796 (10th Cir. 1989); *see also Colorado Health Care Ass'n v. Colorado Dep't of Soc. Servs.*, 842 F.2d 1158, 1164 (10th Cir. 1988) (determining that the court's review of whether the State of Colorado's decision to amend its Medicaid Plan violated federal law is limited and stating, "Our task is only to determine whether the agency conformed with controlling statutes. We can determine whether federal law has been violated." (citation omitted)).

¶8     Nonetheless,"'[a]n exception to this general rule exists if the legislature has either explicitly or implicitly granted discretion to the agency' to interpret or apply the law." *Murray*, 2012 UT App 33, ¶ 12 (alteration in original) (quoting *Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 14, 7 P.3d 777)). In this instance, the legislature has clearly granted the Department of Health discretion to administer the Utah Medicaid Program pursuant to Title XIX of the Social Security Act. *See* Utah Code Ann. § 26-18-3(1) (Supp. 2012).[5] "When the statute delegates discretion to the agency, the court reviews the agency action under Utah Code section 63G-4-403(4)(h)(i), which authorizes relief when agency

---

[5]Within the Department of Health, the Division is charged with "implementing, organizing, and maintaining the [Utah] Medicaid [P]rogram . . . in accordance with the provisions of this chapter and applicable federal law." Utah Code Ann. § 26-18-2.1 (2007); *see also id.* § 26-18-2.3(1) (Supp. 2012) (explaining the Division's responsibility for "the effective and impartial administration of [the Utah Medicaid Program] in an efficient, economical manner," including establishing "safeguard[s] against unnecessary or inappropriate use of Medicaid services," and for "deny[ing] . . . claim[s] for services that fail to meet criteria established by the Division concerning medical necessity or appropriateness"); *see also South Davis Cmty. Hosp. v. Department of Health*, 869 P.2d 979, 982 n.2 (Utah Ct. App. 1994) (stating that the Utah Legislature "grant[ed] [the Division] implicit discretion to administer and interpret the Medical Assistance Act").

action constitutes 'an abuse of the discretion delegated to the agency by statute.'" *Murray*, 2012 UT App 33, ¶ 12 (quoting § 63G-4-403(4)(h)(i) (2011)). Appellate courts have referred to this as review for "reasonableness and rationality." *Id.* ¶ 13 (internal quotation marks omitted). *See generally Primary Children's Hosp. v. Utah Dep't of Health*, 1999 UT App 348, ¶ 13, 993 P.2d 882 (reviewing the Division's denial of Medicaid coverage for reasonableness and rationality); *Peterson ex rel. Frei-Peterson v. Utah Dep't of Health*, 969 P.2d 1, 8 (Utah Ct. App. 1998) (Bench, J., concurring) (same); *South Davis Cmty. Hosp. v. Department of Health*, 869 P.2d 979, 982 (Utah Ct. App. 1994) (same).

¶9 Accordingly, we review the Agency's interpretation of the Medicaid Act as well as the Agency's determination that denial of coverage complied with the Medicaid Act for correctness. However, we review the Agency's interpretation of the Utah Medicaid Program and its application of the law to this case for reasonableness and rationality.


ANALYSIS

¶10 On appeal, Petitioners raise essentially two arguments. First, they contend that the Division's policy denying coverage of SACDs to non-pregnant individuals age twenty-one and older violates the reasonable standards requirement of the Medicaid Act, *see* 42 U.S.C. § 1396a(a)(17). This provision requires states to establish "reasonable standards . . . for determining . . . the extent of medical assistance under [their state medicaid program,] which . . . are consistent with the objectives of [the Medicaid Act]." *Id.* Second, Petitioners contend that the Division's policy violates the Medicaid Act's comparability provision, which requires states to provide the same "amount, duration, or scope" of benefits to all categorically needy individuals. *See id.* § 1396a(a)(10)(B)(i); 42 C.F.R. § 440.230(b) ("Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.").

¶11 The Division responds that both the reasonable standards and comparability requirements do not apply to Petitioners' argument that SACDs cannot be restricted by age within certain "optional" categories. The Division also argues that under the pertinent statutes and regulations comprising the Medicaid Act, it is not required to provide coverage of SACDs to anyone other than those who are pregnant or under the age of twenty-one.

¶12 As set forth below, we determine that both the reasonable standards and comparability requirements apply to whether SACDs can be restricted within the various "optional" categories. We conclude that the Agency abused its discretion in

determining that the Division is not required to provide coverage of SACDs to non-pregnant individuals age twenty-one and older under the Utah Medicaid Program. In reaching our conclusion, we also determine that the Division's policy of denying such coverage to non-pregnant individuals age twenty-one and older violates the Medicaid Act.

¶13    Because of the complexity of this issue resulting from the interrelationships between lengthy state and federal statutes, we have divided our analysis into several distinct sections.[6] First, we provide an introduction to the Medicaid Act, including its history, intent, and scope. Second, we explain the categories of both mandatory and optional services. Within this section, we also list the optional categories within Utah's Medicaid Program. Third, we attempt to describe the different categories within which SACDs could be categorized under the Medicaid Act and the Utah Medicaid Program. Last, we explain our ultimate conclusion that the Agency abused its discretion in determining that the Division is not required to provide coverage of SACDs to non-pregnant individuals age twenty-one and older under the Utah Medicaid Program and that the Division's exclusion of such individuals from coverage violates the Medicaid Act.

## I. The History, Intent, and Scope of Medicaid

¶14    "Medicaid was established in 1965 through Title XIX of the Social Security Act as a cooperative federal and state cost-sharing venture for the provision of basic medical services to eligible applicants." *Bleazard v. Utah Dep't of Health*, 861 P.2d 1048, 1049 (Utah Ct. App. 1993) (footnote omitted) (quoting *Hogan v. Heckler,* 769 F.2d 886, 887 (1st Cir. 1985)); *see also* § 42 U.S.C. § 1396, et seq.

---

[6]Indeed, as described by Judge Calabresi of the Second Circuit Court of Appeals, "Complex regulatory schemes produce complex cases. And the interplay between complex state and federal statutory and regulatory schemes produces very complicated cases." *Catanzano v. Wing,* 103 F.3d 223, 225 (2d Cir. 1996). In fact, "[t]he Social Security Act is among the most intricate of all federal laws. Judges have lamented its labyrinthine complexity, and have characterized it as an aggravated assault upon the English language, resistant to attempts to understand it." *King v. Sullivan*, 776 F. Supp. 645, 649 (Dist. R.I. 1991) (citations and internal quotations marks omitted).

¶15    The purpose of the Medicaid Act is to

> enabl[e] each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care.

42 U.S.C. § 1396-1.  Similarly, this court has explained that the Medicaid Act is designed to "'provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons.'"  *A.M.L. v. Department of Health*, 863 P.2d 44, 47 (Utah Ct. App. 1993) (quoting *Harris v. McRae*, 448 U.S. 297, 301 (1980)).  In particular, "the federal government reimburses states electing to participate in the Medicaid program for a percentage of the funds that the state expends in providing health care to eligible individuals and families" but does so only if "a state . . . develop[s] a plan that is consistent with the Medicaid statute and federal implementing regulations."  *Id.*

¶16    "[P]articipating states [have] considerable latitude in creating and implementing their Medicaid programs."  *Peterson v. Utah Dep't of Health*, 969 P.2d 1, 5 (Utah Ct. App. 1998) (internal quotation marks omitted); *see also Hern v. Beye*, 57 F.3d 906, 910 (10th Cir. 1995) (explaining the states' "considerable flexibility in determining the scope of their Medicaid coverage").  In fact, the United States Supreme Court has held, "[N]othing in the [Medicaid Act] suggests that participating States are required to fund every medical procedure that falls within the delineated categories of medical care."  *Beal v. Doe*, 432 U.S. 438, 444 (1977).  Moreover, participating states are permitted to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."  42 C.F.R. § 440.230(d).

¶17    Although a state may "elect[] to participate in the Medicaid program for a percentage of the funds they expend in providing medical care for eligible individuals and families," *see A.M.L.*, 863 P.2d at 47 (citation and internal quotation marks omitted), "[i]n order to qualify for reimbursement . . . a state must develop a plan that is consistent with the Medicaid statute and federal implementing regulations," *id.*; *see also Hern*, 57 F.3d at 909 ("'Once a State voluntarily chooses to participate in Medicaid, the

State must comply with the requirements of Title XIX and applicable regulations.'" (quoting *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985))).[7] Most importantly,

> there are important restrictions on states in their exercise of this discretion. Two of those restrictions are particularly relevant here. First, Title XIX requires participating states to establish "reasonable standards . . . for determining . . . the extent of medical assistance under [their Medicaid] plan which . . . are consistent with the objectives of [Title XIX]." 42 U.S.C. § 1396a(a)(17). Second, state Medicaid plans "may not arbitrarily deny or reduce the amount, duration, or scope of [any] required service [s] . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c).

*Hern*, 57 F.3d at 910 (omissions and first, second, and fourth alterations in original); *see also* 42 U.S.C. § 1396a(a)(10)(B)(i) (requiring states to provide the same "amount, duration, or scope" of benefits to all categorically needy individuals); 42 C.F.R. § 440.230(b) ("Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose."). Accordingly, states have broad discretion to choose the proper amount, scope and duration of limits on coverage as long as care and services are provided in the "best interests of the recipients." *Alexander*, 469 U.S. at 303.

## II. Mandatory and Optional Categories of Medical Services

¶18     The Medicaid Act identifies twenty-nine categories of medical services for which federal reimbursement is allowed. *See* 42 U.S.C. § 1396d(a). Of these categories, the Medicaid Act mandates coverage by the states in seven categories. *See id.* § 1396a(a)(10)(A)(i). None of the twenty-nine categories of services, however, describe specific medical treatments or procedures that are covered by Medicaid. Rather,

---

[7]Although a state has considerable discretion in fashioning its Medicaid program, that discretion is not unbridled. A state's eligibility determinations for medical assistance must be "'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe*, 432 U.S. 438, 444 (1977) (quoting 42 U.S.C. § 1396a(a)(17)). "This provision has been interpreted to require that a state Medicaid plan provide treatment that is deemed 'medically necessary' in order to comport with the objectives of the Act." *Weaver v. Reagan*, 886 F.2d 194, 198 (8th Cir. 1989).

particular treatments, health services, and medical equipment are covered by a state Medicaid program only if the treatment, service, or device fits within one or more of the broad categories of services identified in that state's Medicaid program.

¶19    In order to participate in Medicaid, a state's program must include the seven categories of services to qualified individuals. *See generally id.*; *Hern*, 57 P.3d at 910; *Peterson*, 969 P.2d at 5. At a minimum, a state plan for medical assistance must include inpatient hospital services; outpatient hospital services; laboratory and x-ray services; nursing facility services and early and periodic screening, diagnostic and treatment (EPSDT) services and family planning services; physicians' services; midwife services; and nurse practitioner services. *See* 42 U.S.C. § 1396d(a)(1)–(5), (17), (21).

¶20    The only mandatory category relevant to this appeal is EPSDT services "for individuals who are eligible under the plan and are under the age of 21." *Id.* § 1396d(a)(4)(B); *see also id.* § 1396d(r). EPSDT is a preventative health care program, the goal of which is to provide Medicaid-eligible individuals under the age of twenty-one with effective, preventative health care through the use of periodic examinations, standard immunizations, diagnostic services, and treatment services. *See generally id.* § 1396d(r). As required, Utah provides EPSDT services for eligible individuals under the age of twenty-one. *See* Utah Admin. Code R414-1-6(e).

¶21    In addition to the seven mandatory categories of services, a state may choose to provide numerous other categories of optional medical services described in the Medicaid Act. *See* 42 U.S.C. § 1396a(a)(10)(A)(ii) (explaining that all of the other categories of services under subsection 1396d(a) are optional); 42 C.F.R. § 440.225 (explaining optional services). Examples of optional categories of services relevant to our inquiry are those for home health services, *see* 42 U.S.C. § 1396d(a)(7);[8]

---

[8]Pursuant to the Medicaid Act, home health services are mandatory as to some services and optional as to others. *See generally* 42 U.S.C. § 1396d(a)(7); *id.* § 1396a(a)(10)(A); *id.* § 1396a(a)(10)(D) ("A State plan for medical assistance must provide for the inclusion of home health services for any individual who, under the State plan, is entitled to nursing facility services."); 42 C.F.R. § 411.15(b) ("A State plan must provide . . . that the agency provides health services to—(1) Categorically needy recipients age 21 or over; (2) Categorically needy recipients under age 21, if the plan provides skilled nursing facility services for them; individuals; and (3) Medically needy recipients to whom skilled nursing facility services are provided under the plan."). The

(continued...)

physical therapy and related services, *see id.* § 1396d(a)(11);[9] and prosthetic devices, *see id.* § 1396d(a)(12).[10]

¶22    Utah participates in Medicaid through the Utah Medicaid Program, which the Division administers. *See* Utah Code Ann. § 26-18-2(4) (2007) (defining the Utah Medicaid Program as "the state program for medical assistance for persons who are eligible under the state plan adopted pursuant to Title XIX of the federal Social Security Act"); *id.* § 26-18-2.1. Utah's Medicaid Program provisions are defined in the Utah Administrative Code. *See* Utah Admin. Code R414-1. Utah has elected to provide coverage of home health services, *see* Utah Admin. Code R414-1-6(2)(l); *id.* R414-14; physical therapy and related services, *see id.* R414-1-6(2)(p); *id.* R414-21; speech-

---

[8](...continued)
home health services category includes (1) nursing services; (2) home health aide service provided by a home health agency; (3) medical supplies, equipment and appliances suitable for use in the home; and (4) physical therapy, occupational therapy, or speech pathology and audiology services provided by a home health agency. *See* 42 C.F.R. § 440.70. If the state opts to provide home health services, the services listed in subsections (1)–(3) are required services for the categorically and medically needy. *See id.* § 440.70(1)–(3). Those services listed in subsection (4), however, are optional. *See id.* § 440.70(4).

[9]Pursuant to the Medicaid Act, and as defined in the Code of Federal Regulations, the physical therapy, occupational therapy, and services for individuals with speech, hearing, and language disorders category includes (a) physical therapy provided by a physical therapist, (b) occupational therapy provided by an occupational therapist, and (c) "diagnostic, screening, preventive, or corrective services" provided for individuals with speech, hearing, and language disorders by or under the direction of a speech pathologist or audiologist. *See generally* 42 U.S.C. § 1396d(a)(11); 42 C.F.R. § 440.110. Any necessary supplies and equipment for each service are required. *See* 42 U.S.C. § 1396d(a)(11); 42 C.F.R. § 440.110(a)(1), (b)(1), (c)(1).

[10]Pursuant to the Medicaid Act, and as defined in the Code of Federal Regulations, "[p]rosthetic devices mean[] replacement, corrective, or supportive devices prescribed by a physician or other licensed practitioner of the healing arts . . . to (1) Artificially replace a missing portion of the body; (2) Prevent or correct physical deformity or malfunction; or (3) Support a weak or deformed portion of the body." 42 C.F.R. § 440.120; *see also* 42 U.S.C. § 1396d(a)(12).

language pathology services, *see id.* R414-1-6(2)(q); *id.* R414-54; and prosthetic devices, *see id.* R414-1-6(2)(r); *id.* R414-70.

### III. Categories Relevant to SACDs Under the Medicaid Act and the Utah Medicaid Program

¶23    In determining that the Division is required to provide coverage of SACDs to non-pregnant individuals age twenty-one and older under the Utah Medicaid Program and that the Division's exclusion of those individuals from coverage violates the Medicaid Act, we must first locate and describe the categories under which SACDs could fit.  Thus, in an attempt to streamline the confusing and overlapping statutes and regulations, we describe the several categories under which SACDs could be categorized within the Medicaid Act and the Utah Medicaid Program.

A.  SACDs Categorized As EPSDT Under the Medicaid Act and the Utah Medicaid Program

   1.  EPSDT Under the Medicaid Act

¶24    EPSDT is one of the categories under which SACDs may be categorized.  EPSDT is one of the seven mandatory categories of services under federal Medicaid.  The required services within EPSDT are (1) screening services, (2) vision services, (3) dental services, (4) hearing services, and (5) "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."  42 U.S.C. § 1396d(r)(1)–(5).  As required, Utah provides EPSDT services.[11]  *See* Utah Admin. Code R414-1-6(2)(e) (explaining that, pursuant to Utah's Medicaid Program, "early and periodic screening and diagnoses of individuals under 21 years of age, and treatment of conditions found, are provided in accordance with federal requirements"); Utah Medicaid Provider Manual § 1–General Information, at 10 (July 2012).

---

[11]"In Utah, [the EPSDT] program is called the Child Health Evaluation and Care (CHEC) Program and individuals under the age of twenty-one with a current Medicaid Card are automatically enrolled in CHEC."  Utah Medicaid Provider Manual § 1–General Information, at 10 (July 2012).

### 2. EPSDT Under the Utah Medicaid Program

¶25    As we explain in more detail below, Utah provides SACDs exclusively under its EPSDT program, which covers individuals under twenty-one years of age.  The Utah Administrative Code does not specifically refer to SACDs or define the devices, but it does provide coverage of speech-related services under certain circumstances, as mentioned in the Utah Administrative Code under the home health services section, *see* Utah Admin. Code R414-14-5(6) ("[S]peech pathology services are occasionally indicated and approved for the patient needing home health service. . . .  Occupational therapy and speech pathology services in the home are available only to clients who are pregnant women or who are individuals eligible under the [EPSDT] Program."), and under the speech-language pathology services section, *see id.* R414-54-4 ("Speech-language pathology services are available only to clients who are pregnant women or who are individuals eligible under the [EPSDT] Program.").

¶26    The Speech-Language Services section of the Utah Medicaid Provider Manual (the Manual) discusses SACDs, stating, "[SACDs] are available only for individuals eligible for [EPSDT] . . . .  Utah Medicaid will authorize [SACDs] as speech language therapy *services* when medical necessity criteria as defined in this document are met." Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9 (Jan. 2012) (emphasis added).  The same section of the Manual provides, "The SACD is a prosthesis to replace a non-functioning, damaged or absent speech controlling mechanism."  *Id.* at 10.  The medical supplies section of the Manual defines prosthetic devices as "replacement, corrective, or supportive devices that are suitable for use in the home . . . to:  (a) artificially replace a missing portion of the body" and states that "[SACDs] are available only for individuals eligible for EPSDT."  Utah Medicaid Provider Manual § 2–Medical Supplies, at 5–6 (July 2012).

### B. SACDs Categorized As Home Health Services, DME, and Speech Pathology Services

#### 1. Home Health Services and DME Under the Medicaid Act

¶27    Another category under which SACDs could be categorized is the home health services category, of which durable medical equipment (DME) is a subcategory.  Under the Medicaid Act, if a state opts into the home health services category, that state is required to provide certain services to the categorically and medically needy as well as to others.  *See supra* note 8; *see also* 42 C.F.R. § 440.70(b)(1) (requiring coverage of nursing services); *id.* § 440.70(b)(2) (requiring coverage of home health aide services); *id.*

§ 440.70(b)(3) (requiring coverage of "[m]edical supplies, equipment, and appliances suitable for use in the home").

¶28  Although the decision to provide home health services also includes the requirement to cover DME, DME is not defined by federal law.  Instead, each state is permitted to define DME for the purposes of its program.  *See Fred C. v. Texas Health & Human Servs. Comm'n*, 988 F. Supp. 1032, 1035 (W.D. Tex. 1997), *aff'd per curiam*, 167 F.3d 537 (5th Cir. 1998).  Thus, under federal Medicaid, states that choose to cover home health services must provide DME according to each state's own definition of the term.  Notwithstanding that flexibility with respect to DME, the Medicaid Act requires each state electing to provide home health services to provide "medical supplies, equipment, and appliances suitable for use in the home."  *See* 42 C.F.R. § 440.70(b)(3); *see also id.* § 441.15 (providing that a state plan must provide medical supplies, equipment, and appliances to categorically needy recipients age twenty-one or over and to medically needy recipients to whom skilled nursing facility services are provided under the plan).

### 2.  Home Health Services and DME Under the Utah Medicaid Program

¶29  Utah has opted to provide home health services for all categorically and medically needy individuals, irrespective of age.  *See* Utah Admin. Code R414-1-6(2)(l); *id.* R414-14-3 ("Home health services are available to categorically eligible and medically needy individuals."); Utah Medicaid Provider Manual § 1–General Information, at 9–11 (July 2012) ("Covered services include:  . . . .  Home health services including . . . medical supplies, equipment, and appliances suitable for use in the home.").  The administrative rule that governs Utah's home health services, R414-14, is the state's counterpart to the Code of Federal Regulation section 440.70.  *Compare* Utah Admin. Code R414-14-1(2), *with* 42 C.F.R. § 440.70.  Matching the federal mandate, Utah's home health services plan includes coverage of "medical supplies, equipment and appliances suitable for use in the home," Utah Admin. Code R414-1-6(2)(l)(iii).  *See generally id.* § R414-70.

¶30  In Utah, DME is defined generally as equipment that,

> (a) can withstand repeated use;
>
> (b) is primarily and customarily used to serve a medical
> purpose;

(c) generally is not useful to a person in the absence of an illness or injury; and

(d) is suitable for use in the home.

*Id.* R414-70-2(1).

¶31    More specifically, however, DME is restricted to the equipment described in the Manual and the Medical Supplies Manual and List.  *See id.* R414-1-5(2) (stating that the Medical Supplies Manual and List described in the Utah Medicaid Provider Manual, section 2, is incorporated by reference into the Utah Medicaid Program); *id.* R414-70-2(6) (same); *id.* R414-70-3(2) ("Medical supplies, DME, and prosthetic devices are limited to services described in the Medical Supplies Manual and List.").  The Medical Supplies Manual and List purports to "specif[y] the reasonable and appropriate amount, duration, and scope of the service sufficient to reasonably achieve its purpose." *Id.* R414-70-3(3).  Whether receiving home health services as an optional or a mandatory service, "[a]n individual . . . *may* receive medical supplies, DME, and prosthetic devices as described in the Medical Supplies Manual and List," *id.* R414-70-4(1) (emphasis added); *see also id.* R414-70-5(1), provided that the individual "meet[s] the criteria established in the . . . List and obtain[s] prior approval if required," *id.* R414-70(4)(2); *see also id.* R414-70-5(2).  SACDs are not listed as DME in the Medical Supplies List.

    3.  Home Health Services and Speech Pathology Under the Medicaid Act

¶32    Speech pathology services as a home health service is still another category under which SACDs could fit.  Though it must provide nursing services, home health aide services, and DME, a state that includes home health services in its program is not required to provide speech pathology services as a home health service.  *See* 42 C.F.R. § 440.70(b)(4) (stating that "[p]hysical therapy, occupational therapy, or speech pathology and audiology services, provided by a home health agency or by a facility licensed by the State to provide medical rehabilitation services" are optional).  Federal regulation 440.70(b)(4) includes a cross-reference to regulation 441.15, which states, "Home health services include, as a minimum[,] . . . (1) Nursing services; (2) Home health aide services; and (3) Medical supplies, equipment, and appliances." *Id.* § 441.15(a).

¶33    There is no definition of "home health speech pathology services" contained in the Medicaid Act.  Speech pathology is generally defined as "the scientific study and treatment of defects, disorders, and malfunctions of speech and voice, as stuttering,

lisping, or lalling, and of language disturbances, as aphasia or delayed language acquisition." Dictionary.com Unabridged, http://dictionary.reference.com/browse/ speech + pathology (last visited on September 18, 2012). Speech pathologists generally evaluate individuals with speech and language disorders to establish their causes and provide treatment and therapy to correct or ameliorate speech problems. Home health speech pathology services may but are not required to be "provided by a home health agency or by a facility licensed by the State to provide medical rehabilitation services." 42 C.F.R. § 440.70(b)(4).

> 4. Home Health and Speech Pathology Services Under the Utah Medicaid Program

¶34 With regard to home health and speech pathology services, as a counterpart to federal regulation section 440.70(b)(4), the Utah Administrative Code provides,

> Physical therapy and speech pathology services are occasionally indicated and approved for the patient needing home health service. Any therapy services offered by the home health agency directly or under arrangement must be ordered by a physician and provided by a qualified licensed therapist in accordance with the plan of care. Occupational therapy and speech pathology services in the home are available only to clients who are pregnant women or who are individuals eligible under the [EPSDT] Program.

Utah Admin. Code R414-14-5(6) (describing service coverage under home health services). Thus, speech pathology services in Utah are not actually available to persons like Petitioners who are not pregnant and who are age twenty-one and older. Moreover, Utah only allows that a "home health agency [to] provide therapy services . . . in accordance with medical necessity and after receiving prior authorization." *Id*. at R414-14-5(18).

C. SACDs Categorized As Physical Therapy and Speech-Related Services and Equipment

     1. Speech-Related Services and Equipment Under the Medicaid Act

¶35    Speech-related services and equipment is still another category under which SACDs could logically be categorized. In addition to the optional speech pathology services available under the home health services category, *see* 42 C.F.R. § 440.70(b)(4), federal Medicaid outlines another optional category entitled "Physical Therapy and Related Services," *see* 42 U.S.C. § 1396d(a)(11). If a state opts to cover "physical therapy, occupational therapy, and services for individuals with speech, hearing, and language disorders," speech disorder services that are "provided by or under the direction of a speech pathologist or audiologist, for which a patient is referred by a physician or other licensed practitioner of the healing arts within the scope of his or her practice under State law," then supplies and equipment must also be provided. *See* 42 C.F.R. § 440.110(c)(1).

     2. Speech-Related Services and Equipment Under the Utah Medicaid Program

¶36    Utah has opted to provide coverage of certain therapy services akin to those described in the federal physical therapy and related services category. *See* U.S.C. § 1396d(a)(11); 42 C.F.R. § 440.110(c)(1). Specifically, rule 414-1-6 states, "The following services provided in the State Plan are available to both the categorically and medically needy: . . . (p) physical therapy and related services; (q) services for individuals with speech, hearing, and language disorders furnished by or under the supervision of a speech pathologist or audiologist." Utah Admin. Code R414-1-6(2). In addition, the Manual states that "[c]overed services include: . . . Physical therapy, occupational therapy and related services[, and s]ervices for individuals with speech, hearing, and language disorders furnished by or under the supervision of a speech pathologist or audiologist." Utah Medicaid Provider Manual § 1–General Information, at 11 (July 2012).

¶37    However, for categorically and medically needy non-pregnant individuals age twenty-one and older, Utah Medicaid actually limits those therapy services to physical and occupational therapy. *See* Utah Admin. Code R414-54-4(1) ("Speech-language pathology services are available only to clients who are pregnant women or who are individuals eligible under the [EPSDT] Program."); *id.* R414-21-2 ("Physical therapy and occupational therapy services are available to categorically and medically needy individuals under Medicaid when received from an independent occupational therapist

or an independent physical therapist including group practices, rehabilitation centers and hospitals.").  The Manual also provides that SACDs "are available only for individuals eligible for [EPSDT]. . . .  Utah Medicaid will authorize [SACDs] as speech language therapy *services* when medical necessity criteria as defined in this document are met."  Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9 (Jan. 2012) (emphasis added).

¶38    Thus, in apparent contradiction to rule 414-1-6 and the general information provided in the Manual, Utah makes "speech-language pathology services" or "speech-language services" available only to pregnant individuals or individuals eligible through the EPSDT program.  *See* Utah Admin. Code R414-54-4(1); Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9–12.  These services are further limited to those described in the Speech-Language Services Provider Manual, found in section 2 of the Manual, to "include evaluative, diagnostic, screening, preventative or corrective processes planned and provided by a speech-language pathologist for which a recipient is referred by a physician [pursuant to] 42 C.F.R. 440.110(c)."  Utah Medicaid Provider Manual § 2–Speech-Language Services, at 4 (emphasis omitted); *see also* Utah Admin. Code R414-54-3(2)-(3).

D.  SACDS Categorized As Prosthetic Devices

    1.  Prosthetic Devices Under the Medicaid Act

¶39    The last relevant category under which SACDs could be categorized is the prosthetic device category.  Prosthetic devices are an optional category under the Medicaid Act.  *See* 42 U.S.C. § 1396d(a)(12).  Under the federal definition,

> "Prosthetic devices" mean[] replacement, corrective, or supportive devices prescribed by a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law to—
>
> > (1) Artificially replace a missing portion of the body;
> >
> > (2) Prevent or correct physical deformity or malfunction; or

(3) Support a weak or deformed portion of the body.

42 C.F.R. § 440.120.

2. Prosthetic Devices Under the Utah Medicaid Program

¶40     Utah has opted to provide prosthetic devices.  *See* Utah Admin. Code R414-1-6(2) ("The following services provided in the State Plan are available to both the categorically needy and medically needy:  . . . (r) prescribed drugs, dentures, and prosthetic devices."); *see also* Utah Medicaid Provider Manual § 1–General Information, at 11 (July 2012) ("Covered services include:  . . . [p]rescribed drugs, dentures and prosthetic devices.").  The Utah Medicaid Program defines prosthetic devices as

> replacement, corrective, or supportive devices that are suitable for use in the home, such as braces, orthoses, or prosthetic limbs prescribed by a physician or other licensed practitioner of the healing arts within the scope of his or her practice as defined by state law to:
>
> (a) artificially replace a missing portion of the body;
>
> (b) prevent or correct physical deformities or malfunction; or
>
> (c) support a weak or deformed portion of the body.

Utah Admin. Code R414-70-2(7).

¶41     The Manual allows prosthetic devices for "persons residing in a long term care facility as well as for patients in their own home and [these prosthetic devices] are limited to the services described on the Medical Supplies List."  Utah Medicaid Provider Manual § 2–Medical Supplies, at 5 (July 2012).  Within the definition of prosthetic devices, the Manual states that SACDs "are available only for individuals eligible for EPSDT" and refers the reader to the Speech-Language services section of the Manual for criteria.  *See id.* at 6.

¶42     As with DME available in connection with home health services, prosthetic devices are restricted to those devices described in the Medical Supplies Manual and List.  *See* Utah Admin. Code R414-1-5(2); *id.* R414-70–2(7), -3.  SACDs are not listed as prosthetic devices in the Medical Supplies List.

E. Summary of SACDs Under the Medicaid Act and the Utah Medicaid Program

    1. SACDs Under the Medicaid Act

¶43    In summary, federal Medicaid requires that those states electing to provide home health services also provide coverage of DME, *see* 42 C.F.R. § 440.70(b)(3); *id.* § 441.15(a)(3), but federal Medicaid does not mandate coverage of speech pathology services as part of the home health services category, *see id.* § 440.70(b)(4). Additionally, federal Medicaid requires states opting to provide coverage of speech disorder services as a physical therapy and related service, to also provide supplies and equipment. *See id.* § 440.110(c)(1). It follows, then, that if a state opts to provide speech pathology services as a home health service or chooses speech disorder services as one of its Medicaid categories, then the state must also provide the supplies and equipment associated with those services.

¶44    Aside from the argument that SACDs are equipment related to speech pathology and physical therapy and related services, SACDs may legitimately qualify as DME and prosthetic devices, and nothing in the Medicaid Act precludes them from so qualifying. *See id.* § 440.70(b)(3); *id.* § 440.120. Thus, we must consider whether a state that denies coverage of speech therapy or speech disorder services under the categories of home health services or physical therapy and related services is thereby relieved of the obligation to provide SACDs as DME or prosthetic devices.

¶45    While not controlling in our analysis, we note that a number of courts have determined that their state's plans are required to provide coverage of SACDs to non-pregnant individuals age twenty-one and older. *See, e.g., Meyers v. Reagan*, 776 F.2d 241, 244–45 (5th Cir. 1985) (holding that because Iowa elected to cover physical therapy and related services, including speech pathology services, it was required to comply with the federal regulation providing for any equipment, including SACDs, that the speech pathologist deemed necessary to correct the speech disorder); *William T. v. Taylor*, 465 F. Supp. 2d 1267, 1285–87 (N.D. Ga. 2000) (stating that because Georgia elected to cover home health services, prosthetic devices, and speech language services and because SACDs met the Georgia statutory definitions of DME, prosthetic devices, and necessary equipment for speech pathology language services, the state was required to cover SACDs in its Medicaid plan); *Fred C. v. Texas Health & Human Servs. Comm'n*, 988 F. Supp. 1032, 1036 (W.D. Texas 1997) (holding that because Texas provides SACDs as DME in the EPSDT plan, its denial of benefits to individuals age twenty-one and older "cannot meet the fundamental legal concept of reasonableness" and because Texas provides two other types of prosthetic devices, and SACDs meet the requirements of a

prosthetic device, "it cannot arbitrarily exclude [SACDs] from coverage"), *aff'd per curiam*, 167 F.3d 537 (5th Cir. 1998); *Hunter v. Chiles*, 944 F. Supp. 914, 920 (S.D. Fla. 1996) (concluding that because Florida elected to provide home health services, including DME, and that because SACDs are DME, they are a covered benefit under Florida Medicaid).

### 2. SACDs Under the Utah Medicaid Program

¶46    To review, Utah has elected to include in its Medicaid program the optional categories of home health services, including DME and speech pathology services; physical therapy and speech disorder services; and prosthetic devices. *See generally* Utah Admin. Code R414-1-6(2)(l), (p)-(r); *id.* R414-14-3, -5(6); *id.* R414-70-4(1), -5(1). Yet, all of these categories are restricted to conditions set forth elsewhere in the Utah Administrative Code. Coverage of DME and prosthetic devices is limited by the Manual and the Medical Supplies Manual and List, *see id.* R414-70-3(2), and coverage of speech-related services is limited to non-pregnant individuals age twenty-one and older, *see id.* R414-14-5(6); *id.* R414-54-4(1). These categories are additionally restricted in the Manual and the Medical Supplies Manual and List, which explicitly deny coverage of SACDs to non-pregnant individuals age twenty-one and older. *See* Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9–12 (Jan. 2012); Utah Medicaid Provider Manual § 2–Medical Supplies, at 5–6 (July 2012).

¶47    Notably, though the Manual states that "Utah Medicaid will authorize [SACDs] as speech language therapy services," the Manual itself defines SACDs or "augmentative and alternative communication devices" as "electronic or non-electronic aids, devices, or systems that correct expressive communication disability . . . . The device is a *prosthesis* to replace a non-functioning, damaged, or absent body part." Utah Medicaid Provider Manual, § 2–Speech-Language Services, at 9–10 (Jan. 2012) (emphasis added).

### IV. The Division is Required to Provide Coverage of SACDS to Petitioners

¶48    We now consider whether the Agency erred in determining that the Division is not required to provide coverage of SACDs to non-pregnant individuals age twenty-one and older under the Utah Medicaid Program and whether the Division's policy excluding such individuals from coverage violates the Medicaid Act. This issue presents several distinct inquiries, which we explain and resolve below. We ultimately conclude that the Division is required to provide coverage of SACDs to Petitioners and

that the Division's policy of denying coverage of SACDs to non-pregnant individuals age twenty-one and older violates the Medicaid Act.

¶49    The Division does not deny that SACDs meet the description of DME, speech related equipment, and prosthetic devices.[12]  However, the Division contends that under federal Medicaid it may opt to cover SACDs *exclusively* in one category, that is, as speech language pathology services under the EPSDT program, *see* Utah Admin. Code R414-54-4, comparable to the optional federal category of physical therapy and related services, *see* 42 C.F.R. § 440.110(c)(1).  The Division also argues that it can deny coverage of home health-based speech language pathology services and related equipment under subsection 440.70(b)(4) because, like subsection 440.110(c)(1), it is an optional category.  *See id.* § 440.70(b)(4); *id.* § 440.110(c)(1).  The Division argues, therefore, that it can deny coverage of speech language pathology services and equipment to non-pregnant individuals age twenty-one and older, while choosing to cover the devices for individuals under age twenty-one and for pregnant women.  The Division reasons that under subsection 440.70(b)(3), federal Medicaid does not require a state to cover speech pathology equipment as medical equipment suitable for home use for non-pregnant individuals over age twenty-one and older because such an interpretation is contrary to the state's right to opt out of that coverage.  *See id.* § 440.70(b)(3).  To hold otherwise, the Division argues, would nullify subsection 440.70(b)(4).  As an extension of that position, the Division contends that although it is required to provide DME when home health services are provided under subsection 440.70(b)(3), the State's coverage obligation is subject to subsection 440.70(b)(4), making that obligation optional.  Essentially, the Division claims that by characterizing SACDs as a speech pathology service, it can rely on subsection 440.70(b)(4), which makes coverage of home health speech pathology services optional.  Accordingly, the Division argues that coverage of speech pathology equipment is be optional as well.

¶50    Furthermore, the Division asserts that federal Medicaid specifically addresses SACDs only in subsection 440.110(c)(1), which provides the definition for physical therapy and related services, *see* 42 U.S.C. § 1396d(a)(11); 42 C.F.R. § 440.110(c)(1).  According to the Division, "[b]ecause the language of the federal regulations explicitly and unambiguously addresses equipment related to speech pathology services, there is no room to speculate that SACDs can also fit into other categories of coverage such as [DME] or prosthetic devices.  Even if they could, the more specific provisions are controlling . . . ."

---

[12]The ALJ explicitly found that SACDs meet the definition of a prosthetic device.

¶51    The ALJ agreed with the Division and concluded that because federal Medicaid does not specifically require coverage of SACDs as DME or as a prosthetic in any mandated category of Medicaid, and because Utah provides coverage of SACDs specifically as speech pathology services as part of the EPSDT program, the specific provision prevails over the more general one. *See Williams v. Public Serv. Comm'n of Utah*, 754 P.2d 41, 48 (Utah 1988) ("In resolving the conflict between the two statutes, we are guided by the principle that when two statutory provisions conflict, the more specific provision will prevail over the more general provision."). We are not convinced.

¶52    As explained, a state has broad discretion in determining which categories of medical services it will opt into under its Medicaid plan. *See Beal v. Doe*, 432 U.S. 438, 444 (1977). Utah has elected to provide coverage of services in the optional categories of home health services, physical therapy and related services, and prosthetic devices. And federal Medicaid leaves open the possibility of classifying SACDs as DME, speech-related services, and prosthetic devices. By characterizing SACDs only as speech pathology services, Utah's Medicaid Program limits coverage of SACDs to only pregnant women and individuals under age twenty-one. Thus, we must determine whether the State of Utah has exceeded its discretion by doing so.

¶53    The Division's choice to categorize SACDs exclusively as a speech language pathology service available only to pregnant women and individuals under age twenty-one appears to be contrary to its own definition of the devices in both this appeal and in the Manual. *Compare* Utah Admin. Code R414-1-6(2)(l), (p)–(r); *id.* R414-14-3; *id.* R414-14-5(6); *id.* R414-70-4(1); *and id.* R414-70-5(1), *with id.* R414-14-5(6); *id.* R414-54-4(1); *id.* R414-70-3(2); Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9–12 (Jan. 2012); Utah Medicaid Provider Manual § 2–Medical Supplies, at 5–6 (July 2012). The Division contends that the Utah Medicaid Program complies with the Medicaid Act because the Secretary of the United States Department of Health and Human Services (HHS) has approved the state plan. The Medicaid Act requires participating states to submit a state plan, containing a comprehensive description of the nature and scope of the state's Medicaid program for approval by the HHS. *See* 42 U.S.C. § 1396a(a). HHS's approval of a state's plan entitles the state to collect federal government reimbursement for a percentage of the funds it has paid to health care providers servicing Medicaid recipients. *See id.* § 1396b(a). However, HHS's general approval of a state plan does not insulate or immunize that plan from judicial scrutiny of how the plan is specifically administered. Moreover, there is nothing in the Utah Medicaid Program itself,

comprised of Utah statutes and administrative rules, other than in the Manual, that explicitly denies SACDs to non-pregnant individuals age twenty-one and older.[13]

¶54 We conclude that the Division's policy limiting its obligation to provide coverage of SACDs to only EPSDT-eligible individuals by categorizing SACDs as "speech language pathology services" violates the Medicaid Act. Simply put, it is unreasonable for the State to opt into the categories in which SACDs could be categorized for all categorically and medically needy individuals but then to limit coverage of certain services within those categories by the age of the recipient. Indeed, the State characterizes SACDs as speech language therapy services for purposes of coverage, yet in its own Manual defines the devices as "prosthetics" and "electronic or non-electronic aids, devices, or systems that correct expressive communication disabilities." Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9 (Jan. 2012). SACDs cannot reasonably be prosthetics and communication equipment for those individuals under age twenty-one and pregnant women, but only be speech pathology services for non-pregnant individuals age twenty-one and older.

¶55 Once a state chooses to provide an optional category of services, it must comply with the Medicaid Act and provide coverage of those services. *See Lankford v. Sherman*, 451 F.3d 496, 51 (8th Cir. 2006) ("While a state has discretion to determine the optional services in its Medicaid plan, a state's failure to provide Medicaid coverage for non-experimental, medically-necessary services within a covered Medicaid category is both per se unreasonable and inconsistent with the stated goals of Medicaid."); *Doe v. Chiles*, 136 F.3d 709, 714 (11th Cir. 1998) ("[W]hen a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law." (alteration in original) (citation and internal quotation marks omitted)); *Eder v. Beal*, 609 F.2d 695, 702 (3d Cir. 1979) ("[O]nce a state elects to participate in an 'optional' program, it becomes bound by the federal regulations which govern it."). Specifically, "[o]nce a state chooses to cover one of the optional services which could possibly provide Medicaid funding for augmentative communication devices, that state

---

[13]HHS approved Utah's Medicaid Program. However, the documents that the State refers to as having been presented to HHS for approval explain that Utah's program does not provide the optional speech pathology services to non-pregnant individuals age twenty-one and older. These documents do not demonstrate the Division's attempt to provide SACDs *exclusively* as speech pathology services. Nor do they demonstrate in any other way that the Utah Medicaid Program explicitly denies coverage of SACDs to non-pregnant individuals age twenty-one and older.

is required to provide [S]ACDs." *Hunter v. Chiles*, 944 F. Supp. 914, 919 (S.D. Fla. 1996) (citing *Meyers v. Reagan*, 776 F.2d 231, 244 (8th Cir. 1985)); *see also Meyers*, 776 F.2d at 244 (stating that when Iowa elected to participate in the optional physical therapy and related services category, "it bound itself to act in compliance with [the Medicaid Act]" and could not properly exclude coverage of SACDs). The Division's decision to opt into a category of services and then to restrict coverage of certain services in that category based upon the age of the recipient is unreasonable and arbitrary, in violation of the reasonable standards and comparability requirements of the Medicaid Act. *See* 42 U.S.C. § 1396a(a)(17); *id.* § 1396a(a)(10)(B)(i); 42 C.F.R. § 440.230(b).

¶56     While Utah has the discretion to fashion its own Medicaid program, it must also "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives of [the Medicaid Act]." *See* 42 U.S.C. § 1396a(a)(17). Congress included the reasonable standards requirement in the Medicaid Act to ensure that states were not arbitrary or overly stringent in their provision of Medicaid services. Although Medicaid is a partnership between the states and the federal government, the reasonable standards requirement can best be understood as an effort to limit state discretion in order to facilitate the provision of services to qualified Medicaid recipients. The reasonable standards requirement should be construed as a safeguard against both intentional and unintentional state parsimony. Based on the language of that provision, courts have scrutinized state standards to assure conformity with Congress's intent that state Medicaid programs provide necessary medical services to those who cannot afford them.

¶57     Although the Medicaid Act requires that states provide more comprehensive treatment and a greater range of services to individuals eligible for EPSDT programs, *see id.* § 1396a(a)(10)(A); *id.* 42 U.S.C. § 1396d(a)(4)(B); *id.* 42 U.S.C. § 1396d(r)(5), Utah has opted to provide coverage of home health services, physical therapy and other services, and prosthetics for all categorically and medically needy individuals. However, by including SACDs only as speech language pathology services, despite the Division's own broader definition of such services, the Division limits the coverage of SACDs to only those individuals who are pregnant or under the age of twenty-one. *See* Utah Admin. Code R414-1-6(2)(l), (p)–(r); Utah Medicaid Provider Manual § 2–Speech-Language Services, at 9 (Jan. 2012). As the Arizona Supreme Court stated with regard to that state's denial of liver transplants to any individuals other than those in its EPSDT program, "[i]t is reasonable to expand service categories for age-appropriate care to young persons. But it is unreasonable to allocate treatment within a service category solely on the basis of age." *Salgado v. Kirschner*, 878 P.2d 659, 664 (Ariz. 1994).

¶58 Federal case law lends support on this issue. Similar to Utah, Texas also opted to provide home health services as part of its medicaid program, *see Fred C. v. Texas Health & Human Servs. Comm'n*, 988 F. Supp. 1032, 1034 (W.D. Tex. 1997), *aff'd per curiam*, 167 F.3d 537 (5th Cir. 1998), and provided coverage of SACDs as a home health service only under the EPSDT program. *See id.* at 1035. Ultimately, the court in *Fred C.* held that "Texas Medicaid's selection of age as the sole criterion for denying benefits is wholly unrelated to the medical decision at hand and cannot meet the fundamental legal concept of reasonableness." *Id.* at 1036. The *Fred C.* court further explained that, according to the Medicaid Act, "each covered service 'must be sufficient in amount, duration, and scope to reasonably achieve its purpose,'" *id.* (quoting 42 C.F.R. § 440.230(b) (1995)), and that the general purpose [of the Medicaid Act] is to help individuals attain the capability for independence and self-care," *id.* (citing 42 U.S.C. § 1396-1). The court determined,

> The specific purpose is to augment verbal communication through the program's home health care/durable medical equipment service. *See id.* at § 1396d(a)(7) (Supp. 1996). Because the ability to speak and communicate is vital, augmentative communication devices have enabled adult Medicaid recipients with severe speech impairments to live on their own, maintain employment, pay taxes, and become productive members of the community rather than wards of the state. This limits the cost of other medical services, such as nursing costs, and reduces or eliminates the costs of disability and other welfare benefits. *Helping the Mute to Speak*, 17 N.Y.U. Rev. L. & Soc. Change at 741. This Court cannot divine a rational basis to make available the blessings of speech to one who is twenty years three hundred sixty-four days old and deny the same blessing to one who is two days older.

*Id.*

¶59 Other courts have also determined that Medicaid funding cannot be denied on the basis of age. For example, as part of its Medicaid program, the State of Florida opted into the category of home health services, including durable medical equipment, but denied coverage of SACDs to non-pregnant individuals age twenty-one and older. *See Hunter*, 944 F. Supp. at 919. Similar to *Fred C.*, the federal district court in *Hunter* held that "Florida Medicaid's selection of age as the sole criterion for denying benefits is

wholly unrelated to the medical decision at hand and cannot meet the fundamental legal concept of reasonableness." *Id.* at 920; *cf. Hiltibran v. Levy*, 793 F. Supp. 2d 1108, 1114–15 (W.D. Mo. 2011) (holding that incontinence diapers, provided under Missouri's EPSDT program and labeled there as DME, could not be denied to individuals age twenty and older because once Missouri chose to cover this optional service, its decision to deny these individuals services was "in violation of Medicaid's 'reasonable standards' requirement").

¶60    We agree that Utah cannot arbitrarily restrict coverage of SACDs by recognizing their availability only as speech language pathology services. Because Utah has opted into the categories of home health services, physical therapy and related services, and prosthetic devices, it is obligated to cover the same services and equipment for categorically and medically needy non-pregnant individuals age twenty-one and older that it does for individuals eligible under the EPSDT program.

¶61    Furthermore, the denial of coverage of SACDs to non-pregnant individuals age twenty-one and older also violates the Medicaid Act's comparability of services requirement. *See* 42 U.S.C. § 1396a(a)(10)(B)(i) (requiring that states provide the same "amount, duration, or scope" of benefits to all categorically needy individuals); 42 C.F.R. § 440.230(b)–(c) ("Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose" and "may not arbitrarily deny or reduce the amount, duration, or scope of [such] service[s] . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition"). Denying SACDs to individuals age twenty-one and older while providing them to those in the EPSDT program is contrary to the objectives of Medicaid.

¶62    For these reasons, we conclude that Utah's coverage of SACDs exclusively under the EPSDT program, where it provides coverage of home health services, physical therapy and related services, and prosthetic devices to all individuals, violates the Medicaid Act's reasonable standards and comparability requirements.[14]

_____

[14]We reach this conclusion without considering Petitioners' argument that the Utah Medicaid Program's exclusive list of DME violates the reasonable standards requirement of federal Medicaid. *See* Utah Admin. Code R414-70-3(2) (restricting "medical supplies, DME, and prosthetic devices" "to services described in the Medical Supplies Manual and List"); *id.* R414-70-4(1) ("An individual . . . *may* receive medical supplies, DME, and prosthetic devices as described in the Medical Supplies Manual and

(continued...)

List," (emphasis added)); *id.* R414-70-5(1)–(2).  At the heart of this discussion lies the function of the Center for Medicare and Medicaid Services (CMS), which administers federal Medicaid under the United States Department of Health and Human Services. *See* Utah Admin. Code R414-1-2(6) (defining CMS); *Lankford v. Sherman*, 451 F.3d 496, 506–07 (8th Cir. 2006) (same).  In a September 4, 1998, letter to state Medicaid directors, CMS clarified that although "[a] State may develop a list of pre-approved items of [medical equipment (ME)] as an administrative convenience because such a list eliminates the need to administer an extensive application process for each ME request submitted," such a list must "provide[ a] . . . reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list."  A reasonable and meaningful procedure would entail a "process [that] is timely and employs reasonable and specific criteria by which an individual item of ME will be judged for coverage under the State's home health services benefit.  These criteria must be sufficiently specific to permit a determination based solely on a diagnoses, type of illness, or condition." *Id.*  In *DeSario v. Thomas*, 139 F.3d 80 (2d Cir. 1998), *vacated sub nom. by Slekis v. Thomas*, 525 U.S. 1098 (1999), the Second Circuit reversed and vacated the district court's decision to enjoin the Connecticut Medicaid Division from limiting DME to items on an exclusive list of covered equipment. *See id.* at 90–92.  In *Slekis*, the Supreme Court remanded to the Second Circuit to consider the September 4, 1998 CMS letter. *See* 525 U.S. at 1098.

Petitioners did not preserve the exclusive list issue before either the ALJ or the Agency.  "Utah law requires parties to preserve arguments for appellate review by raising them first in the forum below—be it a trial court or an administrative tribunal." *Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 6, 258 P.3d 640 (further stating that the petitioner could satisfy the preservation requirement by raising the issue before either the ALJ or the reviewing commission).  Because Petitioners failed to raise the issue during any of the administrative proceedings, the tribunal below never had an opportunity to consider it. *See id.* ("In an administrative proceeding, the preservation doctrine requires the challenged issue to initially be brought to the fact finder's attention so that there is at least the possibility that it could be considered." (internal quotation marks omitted)).  We therefore decline to consider Petitioners' argument related to whether Utah's exclusive list of DME violates the Medicaid Act.

20100496-CA                                            28

## CONCLUSION

¶63    Although federal Medicaid grants states considerable latitude in designing their Medicaid programs, it also requires states to administer their programs reasonably and nonarbitrarily. Utah has opted into categories of medical services that the Division admits legitimately provide coverage of SACDs to all categorically and medically needy individuals, irrespective of their age. Nevertheless, the Division denies coverage of these devices to non-pregnant individuals based upon its restrictive classification of SACDs set forth in the Utah Medicaid Provider Manual. By doing so, the Division has arbitrarily and unreasonably denied coverage of SACDs based solely on the age of the claimant. Accordingly, the Agency abused its discretion in concluding that the Division's denial of the Petitioners' requests for coverage of SACDs was consistent with its obligations under the Medicaid Act.

¶64    Accordingly, we reverse the Final Agency Ruling and remand for further proceedings consistent with the Petitioners' requests for authorization.


_____
Michele M. Christiansen, Judge


-----


¶65    WE CONCUR:



_____
William A. Thorne Jr., Judge



_____
Carolyn B. McHugh, Judge